HOSTE v SHANTY CREEK MANAGEMENT, INC

Docket No. 185014. Submitted September 18, 1996, at Detroit. Decided
January 21, 1997, at 9:05 A M. Leave to appeal sought.

Lawrence J. Hoste sought worker's disability compensation benefits
from Shanty Creek Management, Inc., and its insurer, Hartford
Insurance Group, and from the Second Injury Fund for injuries suf-
fered while skiing a course at Schuss Mountain for the purpose of
establishing the route for a ski competition and for assuring that
the course was safe. Hoste, a member of the National Ski Patrol,
had been asked by the ski school director to forerun the course.
National Ski Patrol members were given ski passes and discounts
on food and beverages. When no National Ski Patrol member was
available to make runs such as the one Hoste was making when he
was injured, Shanty Creek would hire a paid professional ski
patroller to carry out such duties. A magistrate, following extensive
hearings, held that Hoste was an employee of Shanty Creek, that
the benefits extended to Hoste constituted wages, that Hoste had
other wages as an electrician with Hoste Brothers, Inc., that Hoste
was permanently and totally disabled and entitled to benefits, and
that the Second Injury Fund was liable for 91.6 percent of the
award. The Worker's Compensation Appellate Commission reversed
the magistrate's award, finding the relationship between Hoste and
Shanty Creek to be one of accommodation. The plaintiff appealed
by leave granted.

The Court of Appeals *held*:

1. The appellate commission erred in its application of the eco-
nomic reality test. The work undertaken by Hoste was clearly an
essential and integral part of the operation of the resort, Hoste
received benefits as the result of his position that constituted com-
pensation, it was established that in the absence of a volunteer ski
patroller a paid professional patroller was hired, it is clear that
Hoste did not hold himself out as an independent contractor of ski
patrol services, and it is unclear whether the position he was filling
was customarily held by an independent contractor. Under the cir-
cumstances, the appellate commission erred in concluding that no
employee-employer relationship existed.

2. Because the appellate commission did not reach the questions relating to the allocation of liability, the matter must be remanded to the appellate commission for consideration of those questions. Remanded.

WORKER'S COMPENSATION — EMPLOYEES — NATIONAL SKI PATROL MEMBERS.

A member of the National Ski Patrol who performs services for a ski resort in exchange for a ski pass and discounts on food and beverages is an employee of the ski resort when performing at the request of the resort a service that is integral to the operation of the resort and, in the absence of the availability of a member of the National Ski Patrol, would have been performed by a paid professional patroller (MCL 418.161[1][b]; MSA 17.237[161][1][b]).

*Moceri, Hoste and Bejin, P.C.* (by *Douglas W. Hoste*) (*Daryl Royal*, of Counsel), for the plaintiff.

*Cox, Hodgman & Giarmarco* (by *Marsha M. Woods*), for Shanty Creek Management, Inc., and Hartford Insurance Group.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Angelita Espino*, Assistant Attorney General, for the Second Injury Fund.

Before: WAHLS, P.J., and FITZGERALD and L. P. BORRELLO*, JJ.

WAHLS, P.J. Plaintiff appeals by leave granted the opinion and order of the Worker's Compensation Appellate Commission reversing the magistrate's award of disability benefits. We remand this matter to the commission to reinstate the magistrate's award.

On January 27, 1990, Schuss Mountain hosted a Plymouth Challenge Ski Race. Plaintiff, a member of the National Ski Patrol, was asked by the ski school director for Schuss Mountain to forerun the course, establishing the route for the competitors and assur-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing that the course was safe. Forerunning the course required plaintiff to ski aggressively. As plaintiff approached the bottom of the hill, he misjudged a gate and fell. He sustained a fracture of the C7 vertebra, causing paralysis from which he is unlikely to recover.

After defendants stopped their voluntary payment of worker's compensation benefits, plaintiff filed an application for hearing or mediation, and extensive hearings were conducted before the magistrate. The Second Injury Fund was added as a defendant on the basis of plaintiff's other employment as an electrician with Hoste Brothers, Inc. The central questions litigated were whether plaintiff was an employee of Shanty Creek Management, Inc., and whether his primary employment as an electrician constituted dual employment for which he should be compensated under § 372 of the Worker's Disability Compensation Act, MCL 418.372; MSA 17.237(372).

The magistrate concluded that although plaintiff did not receive any wages from Shanty Creek, he received benefits in the form of a ski pass and discounts on food and beverages that did constitute income. Compensation does not have to be in the form of wages to entitle an employee to disability benefits. Plaintiff did qualify as an employee of Shanty Creek under § 161(1)(b) of the WDCA, MCL 418.161(1)(b); MSA 17.237(161)(1)(b), because he rendered services to it. The magistrate found it compelling that Shanty Creek hired a professional to perform ski patrol duties during the week when National Ski Patrol members were unavailable. The magistrate concluded that plaintiff was an employee subject to the act and that his wages from Shanty Creek were

$89 a week. Plaintiff's wages from Hoste Brothers were $966 a week. Plaintiff was totally and permanently disabled, and the resulting benefit was $427 a week, with the Second Injury Fund liable for 91.6 percent of the award.

Both Shanty Creek and the Second Injury Fund appealed to the Worker's Compensation Appellate Commission. The commission reversed the magistrate's award, characterizing the relationship between plaintiff and the ski resort as one of accommodation. It concluded that plaintiff was no different than any other skier using a complimentary lift ticket. Relying on this Court's opinion in *Amerisure Ins Cos v Time Auto Transportation, Inc*, 196 Mich App 569; 493 NW2d 482 (1992), the commission applied the common-law economic reality test to determine plaintiff's employment status. The commission found that none of the eight principles identified in *McKissic v Bodine*, 42 Mich App 203; 201 NW2d 333 (1972), supported a conclusion that plaintiff was an employee.

This Court must affirm the findings of fact of the commission if they are supported by any competent evidence. *Holden v Ford Motor Co*, 439 Mich 257, 267-269; 484 NW2d 227 (1992). A decision of the commission is subject to reversal if the commission operated within the wrong legal framework or if the decision was based on erroneous legal reasoning. *O'Connor v Binney Auto Parts*, 203 Mich App 522, 527; 513 NW2d 818 (1994). Here, the commission erred as a matter of law in its application of the economic reality test and in its characterization of plaintiff's employment as an accommodation relationship.

At the time of plaintiff's injury, § 161(1) provided the statutory definition of an employee:

(1) As used in this act, "employee" means:

\*    \*    \*

(d) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, provided the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public, and is not an employer subject to this act. [MCL 418.161(1)(d); MSA 17.237(161)(1)(d)].

In *Amerisure, supra,* this Court held that all three provisions of § 161(1)(d) must be satisfied in order to find an individual an employee. The claimant must establish that he does not maintain a separate business, does not hold himself out to and render service to the public, and is not an employer subject to the act. *Id.,* 574. When there is a question concerning whether the individual is an independent contractor, the terms of the statute must be construed in conjunction with the economic reality test. *Id.,* 573.

Our review of the record shows that plaintiff met the three requirements of § 161(1)(d). The testimony of the owner of the ski resort established that use of members of the National Ski Patrol was an integral part of the operation of the resort. When members of the National Ski Patrol were unavailable, the resort hired a paid, professional ski patroller to service the resort. Plaintiff was performing service in the course of the business of an employer at the time of the injury. He was compensated for his services through benefits received from the resort. Compensation does not have to be in the form of money to qualify an employee for coverage under the act. *Betts v Ann Arbor Public Schools,* 403 Mich 507, 515; 271 NW2d 498 (1978). Plaintiff did not maintain a separate busi-

ness as a ski patroller, did not hold himself out independently as a person providing such service to the public, and was not an employer subject to the act.

The commission erred in its analysis of the individual factors of the economic reality test. The economic reality test involves four basic factors: (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal. *Williams v Cleveland Cliffs Iron Co*, 190 Mich App 624, 627; 476 NW2d 414 (1991). In applying these factors, the totality of the circumstances surrounding the work must be examined, with no single factor controlling. *Tucker v Newaygo Co*, 189 Mich App 637, 639-640; 473 NW2d 706 (1991). The economic reality test has also been expressed as eight principles detailed in *McKissic, supra,* which the commission applied. The tests are basically the same, and each provides a rational framework for review. *Williams, supra,* 627. The *McKissic* factors are:

First, what liability, if any does the employer incur in the event of the termination of the relationship at will?

Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?

Fourth, does the employee furnish his own equipment and materials?

Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

> Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?
>
> Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.
>
> Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute. [*McKissic, supra,* 208-209.]

The application of the economic reality test does not alter the result required by the statute. The first factor, potential liability of the employer on termination of the relationship, is neutral. There was no formal contract of employment, and either side could end the relationship at will. The relationship was closer to at-will employment than a contractual obligation. *Rood v General Dynamics Corp,* 444 Mich 107; 507 NW2d 591 (1993).

The commission clearly erred in its analysis of the second factor, whether the work is an integral part of the employer's business that contributes to a common objective. While the commission stated that the resort could operate without a ski patrol, this ignores the testimony of the president of the resort and its director of skiing that the resort would never operate without some form of ski patrol and that the ski patrol was an essential and integral part of the operation. Given this testimony from defendant's employees, the conclusion of the commission is totally unsupported by the record. Plaintiff's work was an integral part of the business.

The commission's finding with respect to the third factor, that plaintiff did not depend on the position

for living expenses, is correct. Plaintiff did receive benefits from his position that constituted compensation. The fourth factor, furnishing of equipment and materials is split between the parties. Plaintiff furnished his own ski equipment, clothing, and first-aid pack, but the resort furnished a patrol room, snowmobiles, and toboggans and it replenished supplies. Contrary to the commission's conclusion, plaintiff supplied only a part of his equipment and supplies, and this factor does not weigh in favor of either side.

The commission also erred in its analysis of the fifth factor, whether the individual holds himself out to the public as one ready and able to perform certain tasks. While plaintiff did hold himself out as a person performing ski patrol duties, this was under the auspices of the resort. Plaintiff was not a free-lance ski patroller and only performed those duties at Schuss Mountain. He did not offer his services outside his regular weekend responsibilities at the hill. Unlike an independent contractor, he was not available for other assignments as a ski patroller.

The sixth factor, whether the work is customarily performed by an independent contractor, is not susceptible to a clear application in this context. There are no published Michigan worker's compensation cases involving a ski patrol member. Review of case law from other states reveals mixed results. In *Cardello v Mt Herman Ski Area*, 372 A2d 579 (Me, 1977), the Maine Supreme Court found that a volunteer ski patroller was not entitled to worker's compensation benefits as an employee, while in *Aspen Highlands Skiing Corp v Apostoulou*, 866 P2d 1384 (Colo, 1994), the Colorado Supreme Court concluded

that a ski patroller was an employee of the ski resort for worker's compensation purposes.

Statutory provisions of other states are more enlightening. A number of states have specific statutes that exclude ski patrol members from the statutory definition of employee. See, e.g., Colorado, Colo Rev Stat 8-41-301(4) (1993 Supp); Nevada, Nev Rev Stat 616A.110(5); Idaho, Idaho Code 72-212; and Montana, Mont Code Ann 39-71-118. These statutes suggest that but for the specific exclusion, volunteer ski patrollers would otherwise be considered employees eligible for worker's compensation benefits. Michigan has no such legislative exclusion. This factor is inconclusive. Although most states that have specifically considered ski patrollers have excluded them from worker's compensation coverage, this may also indicate that but for the specific exclusion, ski patrollers would be considered employees rather than independent contractors. The Legislature retains the option to specifically exclude ski patrollers from the statutory definition of employee.

The seventh factor, control, maintenance of discipline, and right to engage or discharge employees, is also inconclusive. Although the commission characterized the ski patrol as a self-governing operation independent of the ski resort, this fails to account for the evidence presented. The ski patrol director testified that although the members elected the director, the nominations for director must be approved by ski area management. The resort had the final say concerning whether a person could serve as a patroller. The director acknowledged that the management would dictate the patrol's activities. There is no showing that the resort exercised any less control over

members of the National Ski Patrol than that it used over its own paid weekday ski patroller, who is also a member of the National Ski Patrol.

Under the eighth factor, weight should be given to those factors that will most favorably effectuate the objectives of the statute. The commission did not err in failing to give weight to any one factor, but it did err in finding that none of the factors support plaintiff's claim. Plaintiff's satisfaction of the statutory requirements of § 161(1)(d), along with the application of the economic reality test, mandates that he be found an employee of defendant resort under the statute. The majority of the test factors indicate that plaintiff was not an independent contractor. Contrary to the commission's conclusion, plaintiff was more than a volunteer engaged in an undefined accommodation relationship with the ski resort. There is no support in the statute or the case law for creating a new category of employment relationship short of employee-employer. Plaintiff received significant benefits for himself and his family in rendering service as an integral part of the resort's operation.

In light of its conclusion concerning plaintiff's employment status, the commission did not reach defendants' arguments regarding the proportion of liability. Therefore, this matter is remanded to the commission to reinstate benefits awarded by the magistrate and to address the remaining issues that were not decided in its initial opinion.