JAMES v COMMERCIAL CARRIERS, INC

Docket No. 197697. Submitted February 4, 1998, at Detroit. Decided June 30, 1998, at 9:10 A.M.

Jimmy R. and Helen J. James brought an action in the Wayne Circuit Court against Commercial Carriers, Inc., seeking damages for injuries suffered by Jimmy James (hereinafter plaintiff) when he was struck by a motor home chassis operated by an employee of the defendant. The accident took place at a Michigan facility owned and operated by the defendant while motor home chassis were being loaded on the plaintiff's truck for his delivery to an out-of-state concern. At the time of the accident, the plaintiff was an employee of Fleet Carrier Corporation, a wholly owned subsidiary of Ryder System, Inc. The defendant was also a wholly owned subsidiary of Ryder System. The plaintiff sought worker's disability compensation benefits from Fleet, and he received weekly compensation from Ryder Automotive Operations, Inc., which is another wholly owned subsidiary of Ryder System that is responsible for administering all worker's compensation claims for Ryder System and its subsidiaries. The defendant moved for summary disposition on the basis that the court lacked subject-matter jurisdiction because of the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1). The court, J. Phillip Jourdan, J., after analyzing the employment relationship in light of the factors of the economic-reality test, concluded that the defendant and Fleet were not coemployers of the plaintiff such that the defendant was entitled to the protection of the exclusive remedy provision the WDCA and denied the defendant's motion for summary disposition. The defendant appealed by leave granted.

The Court of Appeals held:

1. A determination whether an employment relationship exists for the purpose of the WDCA involves consideration of all the facts of the employment relationship under the four basic factors of the economic-reality test: (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal.

2. Where a court has determined through the application of the economic-reality test that a parent corporation should be considered the employer of a worker for its subsidiary for purposes of the WDCA, the court may engage in a "reverse-piercing" of the parent corporation's corporate veil and extend to the parent corporation the protection of the exclusive remedy provision of the WDCA.

3. Although the circuit court was correct in its observation that the economic-reality test has not heretofore been used to find that two wholly owned subsidiaries were each deemed for purposes of the WDCA to be an employer of the employees of the other such that each was entitled to the protection of the exclusive remedy provision, under the totality of the circumstances of the present case, the defendant and Fleet must be considered components of the same employer, the parent corporation, Ryder System, such that each is entitled to assert the exclusive remedy provision of the WDCA with respect to the plaintiffs' claims for damages arising out of the alleged negligence of the defendant's employee.

Reversed and remanded.

WORKER'S COMPENSATION — SUBSIDIARY CORPORATIONS — ECONOMIC-REALITY TEST — EXCLUSIVE REMEDY.

Two wholly owned subsidiary corporations may through the application of the economic-reality test under appropriate circumstances be considered components of the same employer, the parent corporation, and thus each be deemed to be an employer of the workers of the other such that both subsidiaries are entitled to the protection of the exclusive remedy provision of the Worker's Disability Compensation Act with respect to an action for damages for a personal injury suffered in the course of employment brought by a worker for either subsidiary (MCL 418.131[1]; MSA 17.237[131][1]).

*Joseph R. Lobb* and *Larry A. Smith,* for the plaintiffs.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Brian Einhorn, Timothy G. Orlando,* and *Barbara H. Goldman*), for the defendant.

Before: SAAD, P.J., and WAHLS and GAGE, JJ.

GAGE, J. Defendant appeals by leave granted from an order denying its motion for summary disposition. We reverse and remand.

Plaintiff was an over-the-road truck driver hauling class five and class eight trucks for Fleet Carrier Corporation (Fleet).[1] Fleet and defendant are wholly owned subsidiaries of Ryder System, Inc. (Ryder). Both are part of the Ryder Automotive Carrier Group (RACG), which is a holding corporation for Ryder's wholly owned subsidiaries within the Automotive Carrier Division.

On September 17, 1993, Fleet's dispatch directed plaintiff to drive to defendant's location in Detroit and pick up motor home chassis to deliver to Forest City, Iowa. Defendant owns and operates a commercial yard located next to a General Motors plant. The factory manufactured truck chassis, which were stored at and shipped from defendant's yard. Plaintiff alleged that while he was at defendant's yard loading chassis onto trucks for transportation, he was struck by a chassis operated by an employee of defendant. As a result, plaintiff's dominant left arm is paralyzed. He also suffered traumatic capsilitis and tendonitis of his left hip joint, producing marked atrophy of his left lower extremity. After his injury, plaintiff applied for worker's compensation benefits from Fleet. He received weekly compensation from Ryder Automotive Operations, Inc., which is another wholly owned subsidiary of Ryder responsible for administering all worker's compensation claims for Ryder and its subsidiaries. The worker's compensation check indicated that the insured was Fleet. Plaintiff subsequently filed suit against defendant, alleging that defendant was

---

[1] Plaintiff Helen James sought damages for loss of support, services, society, companionship, and consortium, and because she must provide care and support for her husband. Because her claims are derivative, the word "plaintiff" refers to Jimmy R. James throughout the opinion.

negligent and breached its duty of reasonable care to plaintiff as a business invitee on its premises.

Defendant moved for summary disposition on plaintiff's claim pursuant to MCR 2.116(C)(4), contending that the circuit court lacked subject-matter jurisdiction because plaintiff's claim was barred by the exclusive remedy provision of the worker's compensation act. The circuit court denied defendant's motion. We review a trial court's ruling on a motion for summary disposition de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995).

MCL 418.131(1); MSA 17.237(131)(1) of the Worker's Disability Compensation Act provides in pertinent part: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." The standard for deciding a motion for summary disposition based on the issue whether a company is an employer under the WDCA was set forth by a panel of this Court in *Kenyon v Second Precinct Lounge*, 177 Mich App 492, 497; 442 NW2d 696 (1989):

> Whether a company is a particular worker's "employer," as that term is used in the workers' compensation act, is a question of law for the courts to decide if the evidence on the matter is reasonably susceptible of but a single inference. *Nichol v Billot*, 406 Mich 284, 302-303; 279 NW2d 761 (1979), (quoting *Flick v Crouch*, 434 P2d 256 [Okla, 1967]). Only where the evidence bearing on the company's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact to decide. *Id.*

We apply the economic-reality test to determine whether employment exists for purposes of the WDCA, which involves considering all the facts surrounding the employment relationship. *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 647; 364 NW2d 670 (1984); *Isom v Limitorque Corp*, 193 Mich App 518, 521; 484 NW2d 716 (1992). The test involves four basic factors: (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal. *Hoste v Shanty Creek Management, Inc*, 221 Mich App 144, 149; 561 NW2d 106 (1997). In applying these factors, the totality of the circumstances surrounding the work must be examined, with no single factor controlling. *Id.* In reviewing an employee-employer relationship under the economic-reality test for purposes of the WDCA, we must "examine the work performed, whether it is part of a common objective integral to the employer's business, and whether this work would normally follow the usual path of an employee." *Kidder v Miller-Davis Co*, 455 Mich 25, 34; 564 NW2d 872 (1997). In evaluating all the circumstances, courts analyze the employment situation in relation to the statutory scheme of worker's compensation law with the goal of preserving and securing the rights and privileges of all the parties. No one factor controls. *Wodogaza v H & R Terminals, Inc*, 161 Mich App 746, 752-753; 411 NW2d 848 (1987).

When, through application of the economic-reality test, a court determines that a parent corporation is the employer for purposes of the WDCA, the result is a "reverse-piercing" of the parent corporation's corporate veil. *Wells, supra* at 650. In *Wells*, the plaintiff

worked at Muskegon Firestone, a wholly owned subsidiary of Firestone Tire and Rubber Company (Firestone). He was injured when a truck rim manufactured by Firestone blew apart. Firestone carried the worker's compensation coverage for all of its local branches, including its subsidiary, Muskegon Firestone. The plaintiff received worker's compensation benefits from Firestone's insurer. Subsequently the plaintiff filed a products liability suit against Firestone. The trial court found that the plaintiff was not an employee of Firestone, and his suit was thus not barred by the exclusive remedy provision. *Id.* at 645-646. The Supreme Court recognized "the general principle that in Michigan separate entities will be respected." *Id.* at 650. "[E]ven though Firestone is the parent company of Muskegon Firestone, its separate existence will be respected, unless doing so would subvert justice or cause a result that would be contrary to some other clearly overriding public policy." *Id.* at 650. For public policy reasons, the Supreme Court found that Firestone was the plaintiff's employer for purposes of the WDCA.

> Our disregard of the separate corporate entities of Firestone and its wholly owned subsidiary is premised upon our recognition of the important public policies underlying the Michigan Worker's Disability Compensation Act and our belief that a contrary determination would be inequitable under the facts of this case. The statutory workers' compensation scheme was enacted for the protection of both employees and employers who work and do business in this state. The system assures covered employees that they will be compensated in the event of employment-related injuries. In addition, employers are assured of the parameters of their liability for such injuries. By agreeing to assume responsibility for all employment-related injuries, employers protect themselves from the possibility of potentially exces-

sive damage awards. In order to effectuate these policies, the statute has been liberally construed to provide broad coverage for injured workers. . . .

If the statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action brought by the employee who claimed and accepted benefits arising from that employment relationship. [*Id.* at 651.]

A salient factor in determining an employee-employer relationship in the parent-subsidiary context is the use of a combined worker's compensation insurance policy by both parent and subsidiary. *Verhaar v Consumers Power Co*, 179 Mich App 506, 509; 446 NW2d 299 (1989). Combined bookkeeping and accounting, together with income tax treatment that regards the corporations as a single entity, has also been a persuasive factor in supporting the conclusion that two corporations should be treated as one for the purposes of the exclusive remedy provision. *Id.* In some cases, the parent company has been directly responsible for hiring and firing, but in *Verhaar* and *Wells*, there was nothing more than unity of personnel policy. *Id.*

This Court reached a similar result in *Isom, supra.* The plaintiff worked for a Kentucky Fried Chicken franchise and was injured by a deep fryer built by KFC Manufacturing Corporation. When the fryer was built, KFC Manufacturing was a wholly owned subsidiary of Kentucky Fried Chicken Corporation, but when the plaintiff was injured it had ceased to exist as a separate entity and was part of KFC National Management Company, a subsidiary of KFC Corporation, which was itself a wholly owned subsidiary of Kentucky Fried Chicken Corporation. This Court

affirmed the trial court's grant of summary disposition to KFC Manufacturing based on the exclusive remedy provision of the worker's disability act. A significant factor in this Court's determination was that Kentucky Fried Chicken Corporation paid for worker's compensation insurance for all of its employees, including the employees of its subsidiaries. The plaintiff was not able to establish that KFC Manufacturing was not included in the coverage that resulted in the payment of benefits to him. *Id.* at 521-522. This Court indicated that even if KFC Manufacturing was a separate legal entity from the parent corporation, under the facts of the case, KFC Manufacturing would be entitled to a "reverse-piercing" of its corporate veil. *Id.* at 522.

> The statutory workers' compensation scheme was enacted for the protection of both employees and employers. The statute is to be construed liberally when an employee seeks benefits, and it should not be construed differently when the employer asserts it as a defense to . . . [an] action brought by the employee who claimed and accepted benefits arising from that employment relationship. [*Id.* at 522-523.]

In the present case, plaintiff particularly relies on this Court's holding in *Wodogaza, supra,* in which a panel of this Court ruled that the exclusive remedy provision did not bar the plaintiff's suit. The *Wodogaza* plaintiff was employed by Preston Trucking Company, Inc., the parent corporation. He was injured on the premises of defendant H & R Terminals, Inc., a wholly owned subsidiary of his employer, by a tractor owned by S & P Equipment, Inc., another wholly owned subsidiary. Plaintiff received worker's compensation benefits from Preston and then filed

suit against the two subsidiaries. The circuit court granted summary disposition to the defendants, finding that the parent corporation had dominion over all operations and, therefore, the exclusive remedy provision applied. *Id.* at 748-750. This Court reversed on the basis of its analysis of the economic-reality test as well as "certain equitable considerations." *Id.* at 748. The panel found that H & R was organized solely for the purpose of owning land and leasing it back to Preston, while S & P was organized for the purpose of owning equipment and leasing it back to Preston. Neither had any employees other than their statutorily required officers, and their offices and activities were controlled by Preston. Neither carried worker's compensation coverage. No one other than the parent corporation exercised any control over the plaintiff, paid his wages, or was responsible for any disciplinary actions. Under these circumstances, this Court found that the parent corporation, not the subsidiaries, was the plaintiff's employer. *Id.* at 753-754.

> Most significantly, the subsidiaries in this case are seeking to shield themselves from tort liability without having assumed any concomitant liability for the payment of workers' compensation benefits. Defendants never accepted any responsibility for the work-related injuries of their parent's employees. Second, . . . the general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. In the present case, defendants point to no injustice resulting from our recognition of their nonemployer status, as determined under an economic reality test analysis. Liability alone constitutes no such injustice. . . . Third, we are not unmindful that . . . the vast majority of states do not extend the reach of the exclusive remedy provision of a workers' compensation act by treating parent and subsidiary corporations as a single entity. [*Id.* at 756.]

We find *Wodogaza* distinguishable from the facts of the present case. Fleet and defendant are not mere shell corporations as were the subsidiaries in *Wodogaza*. Although defendant is attempting to shield itself from tort liability, it has not avoided responsibility for paying worker's compensation insurance. Defendant submitted an affidavit from an executive vice president of RACG stating that defendant is self-insured for worker's compensation insurance under the same filing as Ryder and Fleet, and Ryder purchases excess worker's compensation coverage for all of its subsidiaries. Defendant's and Fleet's worker's compensation claims are all processed through Ryder Services Corporation, another wholly owned Ryder subsidiary.

The circuit court noted correctly that no appellate court of this state has yet found that two wholly owned subsidiaries were each deemed under the economic-reality test to be an employer of the workers of the other such that the subsidiary that was not the employer-in-fact would be shielded from tort liability by the exclusive remedy provision of the WDCA. However, we believe that under the totality of the circumstances of the present case, Fleet and defendant must be considered components of the same employer, their parent corporation Ryder, for purposes of the WDCA. In addition to sharing a filing for worker's compensation self-insurer status, these subsidiaries share numerous financial functions through their connection to the parent corporation. Cash management and treasury functions for all Ryder subsidiaries are performed by Ryder's central staff at its corporate headquarters in Miami. All Ryder customers send their payments to depository accounts that are dispensed into concentration accounts at the end of every day.

The money in the concentration accounts is transferred into disbursement accounts that process all Ryder's subsidiaries' disbursements. Moreover, there is a unity of management between the parent corporation Ryder and each of its subsidiaries. Defendant and Fleet share the same three directors, one who is also a director, president, and CEO of Ryder, and another who is a senior executive vice president of Ryder. Defendant has twenty-seven officers and Fleet has twenty-two officers, nineteen of which they share.

Plaintiff argues that Fleet exercised exclusive control over his work duties, paid his wages, and was charged with hiring, firing, and disciplining employees in his position. Plaintiff contends that his relationship with Fleet was created by a lease agreement, under which plaintiff leased his truck to Fleet and Fleet was given the exclusive right to supervise, control, and use the leased vehicle in its transportation business with plaintiff as the sole operator of the vehicle. As we discussed above, no one factor dominates the analysis under the economic-reality test to determine if an entity is an employer for purposes of the exclusive remedy provision of the WDCA. *Wodogaza, supra* at 752-753. Control is only one factor to be considered, as is payment of wages, hiring and firing, the responsibility for the maintenance of discipline, and the performance of duties as an integral part of the employer's business toward the accomplishment of a common goal. *Andriacchi v Cleveland Cliffs Iron Co*, 174 Mich App 600, 605-606; 436 NW2d 707 (1989). In the present case, as in *Verhaar* and *Wells*, the parent company was not directly responsible for hiring and firing, but there was unity of personnel policy. The general guidelines for hiring, firing, and disciplining

that both defendant and Fleet utilize are established in their union contract, which was negotiated on behalf of Ryder by the vice president of labor relations for Ryder Automotive Operations, Inc.

Plaintiff also points out that a provision in the lease agreement provided that plaintiff needed Fleet's written approval for any use of the vehicle with Fleet's competitors. Plaintiff could refuse to haul any loads except those assigned to him by Fleet. Nonetheless plaintiff went to defendant's Dearborn terminal when given the assignment by Fleet's dispatch. He also accepted the assignment at defendant's terminal to proceed to defendant's Piquette yard to load the chassis to be hauled. From our analysis of the circumstances of this case, we find that defendant and Fleet are not subsidiaries that are engaged in such unrelated commercial activity that, other than seeking to earn profit, there is no discernible "common goal" of which any particular subsidiary could form an "integral part." *Verhaar, supra* at 509. Defendant and Fleet are both part of the Ryder Automotive Carrier Division and engage in the same type of business for which they used to be in direct competition before their acquisition by Ryder. Plaintiff was not merely injured by defendant's product, as in *Wells*, but was actually working for defendant by hauling its freight when he was injured.

We believe that, given the totality of the circumstances, the parent corporation Ryder should be considered plaintiff's employer for purposes of the exclusive remedy provision of the WDCA. Furthermore, we hold that defendant and Fleet are each integral components of Ryder, such that defendant is also entitled to the exclusive remedy provision. Accordingly, the

trial court erred in denying defendant's motion for summary disposition.

Plaintiff has also submitted supplemental authority to this Court, which we acknowledge. In *Bitar v Wakim*, 456 Mich 428; 572 NW2d 191 (1998), the plaintiff was working for a bakery that was personally and wholly owned by the defendant, Mr. Wakim. The defendant also owned the property where the bakery was located and leased the property to the bakery. The plaintiff slipped and fell while taking trash out of the bakery to a dumpster on the property. She received worker's compensation benefits from the bakery and then brought a premises liability suit against the defendant personally. The circuit court granted summary disposition for the defendant on the basis of the exclusive remedy provision of the WDCA. This Court affirmed. The Supreme Court reversed, finding that under the equities of the case the corporate structure should not be disregarded. *Id.* at 430-431. The Court reasoned that the case "does not involve an attempt by an employee of a subsidiary company to state a cause of action against the parent corporation." *Id.* at 433. The plaintiff "injured herself on property owned by a legal entity that was not her employer. Thus, she can bring a lawsuit against the owner of that property without violating the exclusive remedy provision of the Worker's Disability Compensation Act." *Id.* at 434.

We find this authority distinguishable for the reasons stated by our Supreme Court. *Bitar* does not involve the relationship of separate corporate entities but of an individual sole shareholder to a corporate entity that he founded. There is no unity of financial identity or corporate purpose that is found in the

present case. As the Supreme Court noted in *Bitar*, "neither the policies of the [WDCA], nor the interests of justice" require that the defendant be viewed as the plaintiff's employer for purposes of the WDCA. On the other hand, we find clear public policy considerations supporting our conclusion that defendant in the present case should be granted the benefit of the exclusive remedy provision of the WDCA.

Accordingly, we reverse and remand for entry of an order granting summary disposition for defendant. We do not retain jurisdiction.