*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN MCPARTLIN II,

       Plaintiff-Appellee,

v

RK EQUIPMENT REPAIR, INC, and RN
MANAGEMENT COMPANY INC,

       Defendants-Appellants.

UNPUBLISHED
July 6, 2023

No. 359584
Wayne Circuit Court
LC No. 20-011835-NO

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Separate corporations ordinarily prefer to be treated as distinct legal entities, and Michigan law affords each corporation its independent existence absent some abuse of the corporate form, *Seasword v Hilti, Inc (After Remand)*, 449 Mich 542, 547; 537 NW2d 221 (1995), but the workers-compensation system in Michigan muddles that general corporate preference. Here, for example, after plaintiff, John McPartlin, II, slipped and fell on snow and ice while working as an employee of Minority Auto Handling Specialists (MAHS), he pursued workers-compensation benefits from MAHS. He also initiated this action against two defendants—RK Equipment Repair, Inc., (RK Equipment), a separate entity responsible for snow removal at the facility, and RN Management Company, Inc., (RN Management), MAHS's parent company. Although the principals of those corporations had set up an elaborate corporate structure, they responded to plaintiff's suit by trying to avail themselves of the exclusive-remedy provision in the Worker's Disability Compensation Act (WDCA), MCL 418.131(1). The trial court rebuffed that effort, denying summary disposition to those two corporations. Defendants now appeal by leave granted the trial court's orders denying their motions for summary disposition and reconsideration.[1] We affirm.

---

[1] *McPartlin II v RK Equip Repair, Inc*, unpublished order of the Court of Appeals, entered March 30, 2022 (Docket No. 359584).

## I. FACTUAL BACKGROUND

This case arises from an injury plaintiff sustained to his left shoulder when he fell on snow and ice while working as a "switcher" at a cross-dock facility, which is owned by defendant RN Management but associated with a web of corporate entities. Plaintiff was employed by MAHS, a corporate entity that operated the cross-dock. Defendant RK Equipment, a separate corporate entity, bore responsibility for repairing equipment and removing snow and ice at the cross-dock facility. MAHS and RK Equipment are wholly-owned subsidiaries of defendant RN Management, which is a wholly-owned subsidiary of FCS Industries. Those four entities all share the same three corporate officers: Norman Klein; Craig Lowry; and Stephen Klein.

After injuring his shoulder, plaintiff sought worker's compensation benefits from MAHS, but MAHS disputed that claim in part because it alleged that the medical treatment was not related to the injury. Plaintiff subsequently filed this action against defendants RN Management and RK Equipment, alleging that he slipped and fell on an "unreasonably dangerous accumulation of ice and snow[.]" Plaintiff alleged that RN Management was the owner of the property, and therefore being in possession and control of the premises, had a duty to exercise reasonable care to warn and protect plaintiff from unreasonable dangers on the premises, including effectively unavoidable ice and snow accumulations. Plaintiff further alleged that RN Management breached its duties by not addressing and remediating the unreasonably dangerous ice and snow accumulation. Plaintiff also stated that RN Management failed to exercise due care by inspecting the premises for unreasonably dangerous and unavoidable conditions. Plaintiff contended that RK Equipment had assumed the responsibility and duty to maintain the area where he was injured by addressing the snow and ice accumulation and that RK Equipment failed to perform that responsibility or acted in a negligent manner that created an unreasonably dangerous condition.

Defendants sought summary disposition, advancing arguments in support of their motion. Defendants also submitted several exhibits, including an affidavit from Craig Lowry, who served as treasurer of FCS Industries, RN Management, MAHS, and RK Equipment and as financial vice president of FCS Industries, RN Management, and MAHS, and an affidavit from Norman Klein, chief executive officer and president of FCS Industries, chief executive officer of RN Management and MAHS, and assistant secretary of RK Equipment. Defendants argued that plaintiff's exclusive remedy was to pursue WDCA benefits because RK Equipment and RN Management were both considered plaintiff's employers under the WDCA. Plaintiff argued that RN Management and RK Equipment were not his employers, so the exclusive-remedy provision of the WDCA did not bar his tort claims against them. Additionally, defendants argued that the hazard that caused plaintiff's injury was open and obvious and not effectively unavoidable, a claim that plaintiff disputed.

Without conducting oral argument, the trial court denied defendants' motion for summary disposition in a form order that did not provide any explanation for the ruling. Defendants moved for reconsideration, arguing that the factual issues in dispute were such that it would be beneficial to hold oral argument. Defendants also argued that the trial court erred when it denied their request for summary disposition on the ground that defendants qualified as plaintiff's employers and when it did not decide that the hazard was open and obvious and not effectively unavoidable. The trial court issued a written order denying defendants' motion for reconsideration without explaining its reasoning. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, defendants present several challenges to the trial court's denial of their motion for summary disposition under MCR 2.116(C)(4) and (10). First, defendants contend that the trial court erred in denying their motion for summary disposition because they, as corporations related to MAHS, should be considered plaintiff's employers under MCL 418.131(1), so both of them are covered by the exclusive-remedy provision of the WDCA. Second, defendants insist that the trial court should have granted summary disposition to them because the hazard that caused plaintiff to fall and injure himself was open and obvious and not effectively unavoidable. Finally, defendants argue that the trial court erred by denying their motion for summary disposition without conducting oral argument.[2] We will address each of these three contentions in turn.[3]

### A. THE EXCLUSIVE REMEDY PROVIDED BY MCL 418.131(1)

The trial court denied summary disposition to defendants on their theory that the exclusive-remedy provision set forth in the WDCA, MCL 418.131(1), precludes plaintiff from asserting legal claims. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Because "a party's assertion of the exclusive remedy provision of the WDCA is a direct challenge to the trial court's subject-matter jurisdiction," *Harris v Vernier*, 242 Mich App 306, 312; 617 NW2d 764 (2000), a defendant seeking summary disposition on that basis must file a motion under MCR 2.116(C)(4). *Id*. at 313. Summary disposition is appropriate under MCR 2.116(C)(4) if the trial court does not have jurisdiction over the subject matter. *Petersen Fin LLC v Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018). This Court "review[s] decisions on motions for summary disposition under MCR 2.116(C)(4) de novo to determine if the moving party was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact." *Herbolsheimer v SMS Holding Co, Inc*, 239 Mich App 236, 240; 608 NW2d 487 (2000).

---

[2] Defendants also argue on appeal that plaintiff failed to demonstrate that defendants breached any duty they owed to plaintiff to remove any snow and ice. Defendants are required to include each question involved in their statement of questions, MCR 7.212(C)(5), and failure to do so ordinarily results in this Court deeming all unstated issues waived. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). Defendants did not assert the breach-of-duty issue in their statement of questions, and therefore we decline to take up that issue in this appeal.

[3] Defendants contend that their attorney did not receive the trial court's order denying their motion for summary disposition until three days after it was signed and entered on the register of actions, and they did not receive the trial court's order denying reconsideration until eight days after it was entered. Defendants concede that these alleged discrepancies had no impact on this case and did not hinder their ability to meet any applicable filing deadlines. Our Supreme Court has described a moot issue as one in which a judgment " 'cannot have any practical legal effect upon a then existing controversy.' " *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 580; 957 NW2d 731 (2020) quoting *Anway v Grand Rapids Ry Co*, 211 Mich 592, 610; 179 NW2d 350 (1920). Because a ruling in defendants' favor on this procedural issue cannot have any practical legal effect on the controversy in this matter, we decline to take up this issue.

Defendants' motion for summary disposition rests on the assertion that both of them should have been treated as plaintiff's employers, so the exclusive-remedy provision in the WDCA, MCL 418.131(1), precludes plaintiff from filing suit against them. Under MCL 418.131(1), "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." The WDCA does not define the word "employer," *Clark v United Technologies Auto, Inc*, 459 Mich 681, 687; 594 NW2d 447 (1999), so courts "appl[y] the 'economic realities test' to determine whether an employment relationship exists for purposes of the exclusive remedy provision, and thus whether an individual or entity is the 'employer' of a given employee." *Id*. The economic-realities test assesses the totality of the circumstances, but focuses on four factors: " '(1) the control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.' " *Id*. at 688, quoting *Askew v Macomber*, 398 Mich 212, 217-218; 247 NW2d 288 (1976). "No one factor is controlling." *Clark*, 459 Mich at 689.

In addition to the four factors considered in the economic-realities test, courts at times have relied on additional factors in their analysis. In determining that a parent company and its wholly-owned subsidiaries were all considered to be the plaintiff's employer for purposes of the exclusive-remedy provision, this Court observed that "[a] salient factor . . . is the use of a combined worker's compensation insurance policy by both parent and subsidiary." *James v Commercial Carriers, Inc*, 230 Mich App 533, 537; 583 NW2d 913 (1998). Beyond that, "[c]ombined bookkeeping and accounting, together with income tax treatment that regards the corporations as a single entity, has also been a persuasive factor in supporting the conclusion that two corporations should be treated as one for the purposes of the exclusive remedy provision." *Id*. at 539.

Our Supreme Court distinguishes "dual employer" cases from "parent-subsidiary" cases. *Clark*, 459 Mich at 690. Dual employer cases involve entities that share a horizontal relationship, such as sister corporations. *Id*. In dual employer cases, when warranted by the application of the economic-realities test, both corporations can "claim employer status for purposes of the exclusive remedy provision." *Id*. Parent-subsidiary cases, in contrast, involve corporate entities that share "an essentially vertical relationship[.]" *Id*. at 691. In parent-subsidiary cases, when justified under the economic-realities test, two corporations "will be treated as essentially one entity for purposes of the exclusive remedy provision[,]" so the "separate existence of the two entities is disregarded." *Id*. Despite this distinction, the economic-realities test is used in both situations. See *id*. at 689.

Here, we must decide whether defendants RK Equipment and RN Management should be considered plaintiff's "employers," as contemplated by MCL 418.131(1). Without explaining its reasoning, the trial court rejected defendants' argument that they were plaintiff's employers and, therefore, protected by the exclusive-remedy provision of the WDCA. Although RK Equipment and RN Management have different relationships with MAHS, the analysis for each defendant is essentially the same. MAHS is a wholly-owned subsidiary of RN Management, so the two entities share a vertical relationship. *Id*. at 691. RK Equipment and MAHS are wholly-owned subsidiaries of RN Management which have a horizontal relationship. *Id*. at 690. In the dual employer context, "courts have recognized that an employee can work for two employers at the same time," while "the separate existence of each entity is respected." *Id*. Nevertheless, the economic-realities test applies to both vertical and horizontal corporate relationships. *Id*. at 689.

-4-

Because the evidence presented to the trial court was not "reasonably susceptible of but a single inference," but rather was disputed and "conflicting inferences may reasonably be drawn[,]" the issue of defendants' status as plaintiff's employers is a question "for the trier of fact to decide." *Id.* at 694. Under the economic-realities factors, defendants have not identified evidence showing that either defendant controlled plaintiff's duties or had the right to hire, fire, or discipline plaintiff. Defendants cite portions of the affidavits from Norman Klein and Lowry and the deposition of an employee of RK Equipment that purportedly establish that defendants controlled plaintiff's duties and had the right to hire, fire, or discipline him. But a review of the identified portions of those exhibits offers no such support. The evidence reveals that Nancy O'Connell, the general manager of MAHS, oversaw management of personnel at MAHS and that Travis Collins, the dock manager of MAHS, was plaintiff's direct supervisor. The evidence also suggests that Collins and, to a lesser extent, O'Connell controlled plaintiff's duties. Defendants emphasize that O'Connell would often confer with Norman Klein about the operation of the MAHS facility, but that does not support an inference that Norman Klein, rather than O'Connell or Collins, controlled plaintiff's duties on the job. Additionally, plaintiff claimed that no one at RK Equipment or RN Management had the right to discipline or fire him, and that no such person was involved in his hiring.

The evidence about the payment of plaintiff's wages similarly presents an unclear picture. Defendants submitted an affidavit from Lowry in which he stated that wages for MAHS employees were "paid through" RN Management. Other evidence revealed that the wages were paid directly by MAHS and that MAHS's name appeared on plaintiff's paychecks. This resembles the situation in *Clark*, where the plaintiff's paychecks came from the actual employer, despite the fact defendant alleged that the wages were paid from a common fund. *Clark*, 459 Mich at 695. Accordingly, this factor does not support defendants' argument.

The fourth component of the economic-realities test—the common objective of the separate entities—lends support to defendants' assertion that they should be deemed plaintiff's employers. But that fourth factor does not outweigh the countervailing results under the other three factors. Moreover, turning to additional factors courts have considered, the record reflects that the parent company of defendant RN Management, i.e., FCS Industries, was a self-insured entity that carried workers-compensation benefits for defendant RK Equipment and MAHS. Although a combined workers-compensation policy covering multiple entities has been described as one "salient factor" in this analysis, it is not dispositive. *James*, 230 Mich App at 537. In *Clark*, our Supreme Court ruled that the issue of whether defendant was plaintiff's employer for the purpose of the exclusive-remedy provision was an issue that should be decided by the trier of fact because of the numerous conflicting inferences that may be reasonably drawn from known facts, even though both entities were covered by a single workers-compensation policy. *Clark*, 459 Mich at 694, 696.

We also deem it noteworthy that defendants submitted a notice of nonparty at fault, which sought to place blame for plaintiff's fall on MAHS and MAHS's employees. That filing militates against defendants' assertion that MAHS and RN Management should be treated as a single entity. That filing also diminishes the risk of an injustice in defendants' assumption of responsibility for plaintiff's workers-compensation benefits without the protection of the WDCA exclusive-remedy provision. See *James*, 230 Mich App at 541, quoting *Wodogaza v H & R Terminals, Inc*, 161 Mich App 746, 756; 411 NW2d 848 (1987) (deeming it significant that "the subsidiaries in this case are seeking to shield themselves from tort liability without having assumed any concomitant liability

for the payment of workers' compensation benefits."). While there is some evidence that suggests that defendants RN Management and RK Equipment could be regarded as plaintiff's employers, defendants have not presented sufficient evidence to establish that, as a matter of law, those entities should be treated as plaintiff's employers. Accordingly, the trial court did not err when it denied summary disposition to defendants under MCR 2.116(C)(4).

## B. THE OPEN-AND-OBVIOUS DOCTRINE

Next, defendants insist that the trial court should have awarded them summary disposition pursuant to MCR 2.116(C)(10) by applying the open-and-obvious doctrine, which provides that a "possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious" unless "the danger is *unreasonable dangerous* or when the danger is *effectively unavoidable*." *Hoffner v Lanctoe*, 492 Mich 450, 460, 463; 821 NW2d 88 (2012). In deciding whether an open and obvious danger is effectively unavoidable, the key question is "whether any alternatives were available that a reasonable individual in the plaintiff's circumstances would have used to avoid the condition." *Estate of Livings v Sage's Investment Group LLC*, 507 Mich 328, 333, 347; 968 NW2d 397 (2021). Under MCR 2.116(C)(10), summary disposition is justified if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In analyzing defendants' request for summary disposition under MCR 2.116(C)(10) in this case, we must draw all reasonable inferences in favor of plaintiff. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

According to plaintiff's first amended complaint, "[o]n February 6, 2020, at approximately 9:10 am, Plaintiff was walking, as required by his employer MAHS, between two trailers, in order to perform his job when he slipped and fell on an unreasonably dangerous accumulation of ice and snow[.]" Defendants contend that the ice and snow that caused plaintiff's fall and injury were not effectively unavoidable because plaintiff had a reasonable alternative to take instead of confronting the hazard. But defendants have failed to establish that, as a matter of law, there was a reasonable alternative available to plaintiff. Plaintiff testified at his deposition that he had climbed out of the switcher and was walking across snow toward the rear tandems of a trailer and reaching for a wheel chock when he slipped and fell on a layer of ice underneath the snow. Plaintiff was injured when he landed on his left arm and shoulder. Plaintiff faulted defendants for failing to apply salt between the trailers and for failing to remediate the flow of water that resulted in ice under the snow. With regard to alternatives to walking on the snow-covered ice to the rear of the trailer on the day of his fall, plaintiff testified that there was no other way for him to complete the tasks required of his job as a switcher. Specifically, plaintiff testified as follows:

> Q: Isn't it true that if you thought it was dangerous to walk between the trailers you did not have to do that?
>
> A: My job out there is dangerous. So I was trying to perform my job as instructed.
>
> Q: Mr. McPartlin, if it was unreasonably danger[ous] you could have refused to do that work, correct?

-6-

A: Absolutely not. It's part of my job function and it's unavoidable for me to walk that area.

Plaintiff's deposition testimony creates a genuine issue of material fact as to whether the dangerous condition was effectively unavoidable. See *Livings*, 507 Mich at 333 ("We hold that an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes."). Consequently, the trial court properly denied defendants' summary disposition motion under MCR 2.116(C)(10) on the premises-liability claim.

## C. DENIAL OF ORAL ARGUMENT ON MOTIONS

Finally, defendants insist that the complicated issues in their summary disposition motion necessitated oral argument, so the trial court erred by resolving that motion and the reconsideration motion without oral argument. Defendants also claim the trial court committed reversible error by not providing an explanation for its denial of their motions. Under MCR 2.119(E)(3), "[a] court may, in its discretion, dispense with or limit oral arguments on motions, and may require the parties to file briefs in support of and in opposition to a motion." " 'An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes.' " *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017).

We reject defendants' contention that their motions presented issues so complex that oral argument was imperative. Defendants have provided no authority that suggests that oral argument is mandatory for motions containing legal issues of a certain complexity. Additionally, defendants have not identified any argument that they could not present to the trial court because oral argument was not held. Thus, defendants have not established that the trial court abused its discretion when it resolved defendants' motions without the benefit of oral argument. Defendants' claim of error in the denial of oral argument is especially unpersuasive as to their motion for reconsideration. As MCR 2.119(F)(2) states, oral argument on motions for reconsideration shall not take place "unless the court otherwise directs." Therefore, defendants' complaint about the denial of oral argument on their motion for reconsideration turns MCR 2.119(F)(2) on its head.

Although we find no reversible error in the trial court's handling of defendants' motions, we sympathize with defendants in two respects. First, the trial court unilaterally cancelled an oral argument at the last moment even though it had been set on the court calendar. Such last-minute cancellations are highly inadvisable because they often inconvenience attorneys and parties alike. Second, the trial court offered no explanation whatsoever for its decisions on the motions. When no explanation is provided, the parties have no idea why the trial court ruled as it did, the attorneys are hamstrung in trying to present issues for appellate review, and this Court is forced to analyze the rulings of the trial court without the benefit of any reasoning to support the decisions before us. Surely there is a better way, and we trust that the trial court will provide much more support for its decisions in the future.

Affirmed.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates