173 F.3d 591
 Ruthie Mae GREEN, Plaintiff-Appellant,
v.
WINDSOR MACHINE PRODUCTS, INC.; Bel Products, Inc., Defendants,
Ellis Tool, Inc., a Canadian Corporation; Production
Machine Services, Ltd., a Canadian Corporation,
Jointly and Severally, Defendants-Appellees.
 No. 97-2154.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 1, 1998.
Decided April 23, 1999.
 
 S. Jay Ahmad (argued and briefed), Lakin, Worsham & Victor, Southfield, Michigan, for Plaintiff-Appellant.
 James A. Gizicki (argued and briefed), Taylor, Michigan, for Defendants-Appellees.
 Before: MERRITT and DAUGHTREY, Circuit Judges; TRAUGER, District Judge.*
 OPINION
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Ruthie Mae Green appeals from the judgment of the U.S. District Court for the Eastern District of Michigan granting summary judgment in favor of Defendants Ellis Tool, Inc. and Production Machine Services, Inc. The instant matter raises the question whether Michigan's Worker's Disability Compensation Act, Mich. Comp. Laws Ann. § 418.101 et seq., bars an employee of a subsidiary corporation from bringing a personal injury action against other subsidiary corporations of the same parent corporation.[1] For the following reasons, we answer that question in the negative and reverse the judgment of the district court.
 
 I. BACKGROUND
 
 2
 While operating an air bender machine in the course of her employment with Windsor Machine Products, Inc., a producer of auto parts, Plaintiff Green suffered an injury to her left index finger that required surgery. Defendant Ellis Tool, Inc. manufactured the bending machine; Defendant Production Machine Services, Ltd. maintained and repaired the air bender for Windsor Machine Products. At the time of the accident, Windsor Machine Products, Ellis Tool, and Production Machine Services were all subsidiaries of their Canadian parent corporation, Windsor Machine and Stamping, Ltd.
 
 
 3
 Plaintiff filed suit in the Wayne County (Michigan) Circuit Court against both Ellis Tool and Production Machine Services, alleging negligence in the design and manufacture of the air bender. Based on diversity jurisdiction, Defendants successfully removed the action to the U.S. District Court for the Eastern District of Michigan. Defendants then filed a Motion for Summary Judgment, arguing that Plaintiff is limited to the exclusive remedy provision of Michigan's Worker Disability Compensation Act, Mich. Comp. Laws Ann. § 418.131, because Ellis Tool and Production Machine Services are both subsidiaries of Windsor Machine and Stamping. The district court granted the motion and this appeal ensued.
 
 II. ANALYSIS
 
 4
 Our analysis in the instant matter is guided by two decisions of the Michigan appellate courts. See Wells v. Firestone Tire and Rubber Co., 421 Mich. 641, 364 N.W.2d 670 (1984); Wodogaza v. H & R Terminals, Inc., 161 Mich.App. 746, 411 N.W.2d 848 (1987). In light of the facts before us, we find that the instant matter can be distinguished from Wells and falls squarely under the logic of the Michigan Court of Appeals in Wodogaza.
 
 
 5
 In Wells, the plaintiff was injured in the course of his employment at Muskegon Firestone Auto Supply while changing a tube and tire on a truck rim manufactured by the defendant, Firestone Tire and Rubber Company. At the time of the injury, Muskegon Firestone was a wholly owned subsidiary of defendant Firestone. All of the subsidiary's directors were employees of the parent corporation, and the latter carried the workers' compensation coverage for employees at Muskegon Firestone. Plaintiff, citing the parent corporation as his employer, filed for and received compensation benefits and subsequently filed a product liability suit against that same corporation. The Michigan Court of Appeals reversed the trial court's denial of summary judgment to the parent corporation based on the exclusive remedy provision of the Worker's Disability Compensation Act, and the Michigan Supreme Court affirmed. The state Supreme Court, applying the economic reality test to the facts in the case,[2] engaged in a "reverse-piercing" of the parent corporation's corporate veil, concluding that it would be inequitable to deny that corporation the benefit of the exclusive remedy provision. The Court reasoned that if a parent corporation is, under the economic realities of a situation, the true employer of any injured worker, then it should not be denied the protection of the exclusive remedy provision merely because the injured worker was employed in name by a subsidiary of the parent corporation. See 364 N.W.2d at 673-75.
 
 
 6
 In Wodogaza, plaintiff Steve Wodogaza was an employee of a parent corporation who suffered injury during his employment because of the negligence of two subsidiary companies of the plaintiff's employer. Plaintiff filed suit against both subsidiaries, and defendants moved for dismissal based upon the exclusive remedy provision of the Worker's Disability Compensation Act. In reversing the dismissal by the trial court, the Michigan Court of Appeals applied the economic realities test to determine whether defendants were "employers" under the Act, since that law's text precisely states that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer [.]" Mich. Comp. Laws. Ann. § 418.131 (emphasis added). Noting that there was "no intimation that anyone other than [the parent company] exercised control over plaintiff, paid his wages, or was responsible for the imposition of discipline," the court found that it was "clear" that the parent company, and neither of the two subsidiaries, was plaintiff's employer. 411 N.W.2d at 851.
 
 
 7
 The Court of Appeals also discussed Wells in some detail, noting the important differences between the facts before it and those considered by the Michigan Supreme Court in that case. It stated:
 
 
 8
 The circumstances in Wells clearly suggested that equity would not be served by failing to treat Firestone as plaintiff's employer for purposes of the exclusive remedy provision. Firestone was determined to be plaintiff's employer under the economic reality test, and plaintiff himself disregarded the corporate distinction between Firestone and its subsidiary in asserting that the former was his employer for the purpose of obtaining workers' compensation payments. For the same reasons, the instant plaintiff would be precluded from suing [the parent corporation for which he worked]. It does not necessarily follow, however that a preclusion from suing the parent corporation under an economic realities analysis also mandates a preclusion from suing the parent's subsidiary corporations.
 
 
 9
 First, the equities involved in these two instances are not identical. Most significantly, the subsidiaries in this case are seeking to shield themselves from tort liability without having assumed any concomitant liability for the payment of workers' compensation benefits. Defendants have never accepted any responsibility for the work-related injuries of their parent's employees. Second, as noted by the majority in Wells, the general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. In the present case, defendants point to no injustice resulting from our recognition of their nonemployer status, as determined under an economic reality test analysis. Liability alone constitutes no injustice. Indeed, if negligence on the part of one or both of the nonemployer subsidiaries in this case brought about plaintiff's injuries, injustice would result by failing to permit plaintiff to seek compensation against the proper tortfeasor or tortfeasors. Third, we are not unmindful that, as pointed out by Justice Levin in his dissent in Wells, the vast majority of states do not extend the reach of the exclusive remedy provision of a workers' compensation act by treating parent and subsidiary corporations as a single entity. Rather, as recognized by the majority in Wells courts generally respect the separateness of corporate entities.
 
 
 10
 Id. at 852 (emphasis added) (citation omitted). The court of appeals also discussed the incentives of creating various corporate structures and the concomitant responsibilities arising therefrom:
 
 
 11
 We are aware that manifold business, financial, practical, and perhaps even esthetic considerations may move a corporate entity to diversity its structure through the creation of subsidiary corporations. Within those considerations, however, should be a recognition of the obligations which arise as a consequence of such diversification. As noted in Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 662 (6th Cir.1979), "[t]he owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee." In this case, absent the equitable and overriding public policy considerations present in Wells, we decline to circumvent the general rule by reverse-piercing corporate veils. Under the circumstances in this case, we believe that the general rule and equitable considerations require us to recognize the separate corporate identities of defendants and [the parent corporation]. Thus, defendants cannot obtain the protection of the exclusive remedy provision of the [Act] available to employers....
 
 
 12
 Id. at 852 (citation omitted).
 
 
 13
 Applying the economic realities test to the circumstances in this case, we conclude that Defendants Ellis Tool and Production Machine Services, two of 13 subsidiaries controlled by parent corporation Windsor Machine and Stamping, do not satisfy the elements necessary to invoke the exclusive remedy provisions of Michigan's Worker Disability Compensation Act. The Defendants have offered no evidence whatsoever that they exercised control of Plaintiff's duties, paid Plaintiff's wages, or had any authority to hire, fire, or discipline Plaintiff. The only company that had any control over these matters was Plaintiff's direct employer, Windsor Machine Products, and to a lesser extent, the parent company. Plaintiff received worker compensation benefits through coverage from Windsor Machine Products, not through its fellow subsidiary corporations.
 
 
 14
 Defendants' reliance on Wells is misplaced. In that case, the plaintiff, an employee of a subsidiary corporation, filed for workers' compensation against the parent corporation, and then filed his third-party tort claim against that same parent. At the time of the injury, all of the subsidiary directors were employees of the parent, and the plaintiff was subject to the rules and regulations of the parent and could be supervised, hired, or fired by the parent. Applied to the instant matter, Wells can take us only so far as to conclude that Plaintiff Green might not be allowed to receive workers' compensation from Windsor Machine Products and also sue its parent corporation, Windsor Machine and Stamping, under the exclusive remedy provision of Michigan's Worker's Disability Compensation Act. That conclusion, however, is of no relevance to this case. Here, Plaintiff is not suing the parent corporation, but rather two other subsidiaries of that parent. As the Wodogaza court pointed out, "[i]t does not necessarily follow, however that a preclusion from suing the parent corporation under an economic realities analysis also mandates a preclusion from suing the parent's subsidiary corporations." 411 N.W.2d at 852.
 
 
 15
 Under both the economic reality test and a review of equitable and public policy considerations, it would be unreasonable to treat all of the subsidiaries and the parent corporation as a single entity for the purposes of Michigan's Worker's Disability Compensation Act. As subsidiaries to Windsor Machine and Stamping, Defendants had no control of Plaintiff's duties; they did not pay her wages; and they had no right to hire, fire, or discipline her. Moreover, the strong state law presumption against piercing corporate veils and the equitable considerations favoring an injured employee lead this Court to conclude that the Defendants should be recognized as separate corporations to protect Plaintiff Green from injury by a defective machine manufactured and maintained by her own employer's sister subsidiaries.
 
 
 16
 For the foregoing reasons, the district court's summary judgment in favor of Defendants is vacated and the case is remanded to the lower court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Aleta A. Trauger, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The exclusive remedy provision of the Act provides, in pertinent part: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer[.]" Mich. Comp. Laws Ann. § 418.131
 
 
 [2]
 As enunciated by the Michigan appellate courts on numerous occasions, the economic reality test considers the following relevant factors in determining which of the two separate corporations, parent or subsidiary, was a plaintiff's actual employer for purposes of the Worker's Disability Compensation Act: (1) control of a worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) the performance of the duties as an integral part of the employer's business toward the accomplishment of that goal. See, e.g., Schulte v. American Box Bd. Co., 358 Mich. 21, 99 N.W.2d 367 (1959); Lambard v. Saga Food Serv., Inc., 127 Mich.App. 262, 338 N.W.2d 207 (1983)