CLARK v UNITED TECHNOLOGIES AUTOMOTIVE, INC

Docket No. 108820. Argued January 20, 1999 (Calendar No. 1). Decided
June 2, 1999.

Beotis Clark, Jr., and Mia L. Clark brought an action in tort in the
Ottawa Circuit Court against United Technologies Automotive, Inc.,
and other corporate entities involved in the manufacture, sale, and
installation of a punch press, and against Kenneth L. and Marlene
L. Herzhaft, doing business as Lincoln Engineering Company, the
owners of the press. The plaintiffs alleged that Beotis Clark was
injured while working at Lincoln when the press malfunctioned.
The Herzhafts also are the sole shareholders of Grand Haven Die
Casting Company, which is situated adjacent to Lincoln; Mr. Clark
also performed work for Grand Haven. Before filing suit, Beotis
Clark sought and received worker's compensation from Grand
Haven. The court, Wesley J. Nykamp, J., applying the economic
realities test, granted summary disposition for the Herzhafts, hold-
ing that, upon application of the economic realities test, the plain-
tiff was employed by both Grand Haven and Lincoln, and that
therefore his exclusive remedy against them was under the
Worker's Disability Compensation Act. The Court of Appeals,
MICHAEL J. KELLY, P.J., and SMOLENSKI and GIOVAN, JJ., affirmed in an
unpublished order, citing *Bitar v Wakim*, 211 Mich App 617 (1995)
(Docket No. 189502). While the plaintiffs' application was pending,
the Supreme Court reversed *Bitar*. 456 Mich 428 (1998). The plain-
tiffs appeal.

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
and Justices CORRIGAN and YOUNG, the Supreme Court *held*:

Under the economic realities test, whether the defendants were
also employers of the plaintiff for purposes of the exclusive rem-
edy provision of the Worker's Disability Compensation Act, MCL
418.131; MSA 17.237(131) is a question for the trier of fact.

1. In enacting Michigan's Worker's Disability Compensation Act,
the Legislature created a system that substitutes statutory compen-
sation for common-law negligence liability and its related defenses.
Under this system, employers provide compensation to employees
for injuries suffered in the course of employment, regardless of
who is at fault. In return, employees are limited in the amount of

compensation they may collect from their employers, and, except in limited circumstances, may not bring a tort action against an employer. The WDCA does not define the term "employer." To determine whether an employment relationship exists for purposes of the exclusive remedy provision, and thus whether an individual or entity is the "employer" of a given employee the economic realities test is applied.

2. In applying the economic realities test, courts generally consider four factors: the control of a worker's duties; the payment of wages; the right to hire, fire, and discipline; and the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. No one factor is controlling. Whether a business entity is a particular worker's "employer," as that term is used in the WDCA, is a question of law for the courts to decide if the evidence on the matter is reasonably susceptible of but a single inference. Only where evidence of a putative employer's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact. In light of the numerous conflicting inferences that reasonably may be drawn from the known facts, including who hired the plaintiff, who paid him, and who had the right to supervise, discipline, and fire him, whether Lincoln was a coemployer of plaintiff for purposes of the exclusive remedy provision is an issue for the trier of fact.

Justice BRICKLEY, joined by Justices CAVANAGH and KELLY, concurring, stated that because, under the facts of this case, the defendants cannot show that recognizing Grand Haven's corporate existence would subvert justice or perpetuate fraud, the plaintiff may bring an action against it without violating the exclusive remedy provision of the worker's compensation act. The plaintiff never claimed that the defendant was his employer in order to receive worker's compensation benefits, and there is no evidence that the plaintiff structured his cause of action in such a way as to reap all the benefits, and none of the drawbacks, of the worker's compensation act. Rather, the plaintiff's claims simply recognized the corporate structure established by the defendant.

Reversed and remanded.

*Davis & Kuhnke, P.C.* (by *Peter A. Davis*), and *Fajen & Miller, P.L.L.C.* (by *Nelson P. Miller*), for plaintiffs-appellants.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman*), for defendants-appellees.

TAYLOR, J. This case presents the issue whether defendants Kenneth and Marlene Herzhaft, doing business as Lincoln Engineering Company, were employers of plaintiff Beotis Clark, Jr., at the time of plaintiff's injury and therefore entitled to assert the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131), as a defense to a tort action brought by plaintiff. Applying the economic realities test to this dual employer case, we hold that whether defendants were also employers of plaintiff for purposes of the exclusive remedy provision is a question for the trier of fact. We therefore reverse the judgments of the Court of Appeals and the trial court and remand.

### FACTS AND PROCEEDINGS

Defendants Kenneth and Marlene Herzhaft operate two tooling businesses. They are the sole shareholders of Grand Haven Die Casting Co., a die casting corporation, and the sole proprietors of Lincoln, a circuit board part manufacturer for which the Herzhafts had filed an assumed name certificate.[1]

---

[1] As "Lincoln" was merely an assumed name used by Kenneth and Marlene Herzhaft, see MCL 445.1; MSA 19.821, the terms "Herzhaft," "defendants," and "Lincoln" are interchangeable for purposes of our analysis today. Further, although the parties have not raised an issue regarding the involvement of Marlene Herzhaft in Lincoln's daily operations, we assume that, because Lincoln was an assumed name for both Kenneth and Marlene Herzhaft, when Mr. Herzhaft acted in his role at Lincoln he acted on behalf of himself and Ms. Herzhaft. In doing this, we note that plaintiff has not argued that Mr. and Ms. Herzhaft should be treated as separate individuals for purposes of this case.

Grand Haven and Lincoln are situated in two adjacent buildings on a lot in the city of Grand Haven. The lot and structures are owned by Kenneth and Marlene Herzhaft doing business as Lincoln. Both companies are run day-to-day by Kenneth Herzhaft as owner and president.

Plaintiff was hired by Kenneth Herzhaft in August of 1991 and listed as an employee of Grand Haven. Plaintiff was originally placed in Grand Haven's die casting operations. In October of 1991, plaintiff was instructed to begin working at Lincoln's circuit board operation. Thereafter, although plaintiff was paid by way of Grand Haven payroll checks, he continued to rotate back and forth between Lincoln and Grand Haven, performing work for both businesses.

On March 5, 1992, while working at Lincoln, plaintiff was injured when a power punch press machine malfunctioned. Plaintiff sought and received worker's compensation benefits from Grand Haven. He and his wife then sued in tort defendants Kenneth and Marlene Herzhaft doing business as Lincoln.[2]

Defendants filed a motion for summary disposition under MCR 2.116(C)(10). Defendants' theory was that application of the economic realities test yielded but one conclusion—that plaintiff was employed by both Grand Haven and Lincoln. Defendants contended that therefore plaintiff's exclusive remedy against them was under the WDCA. The trial court agreed with defendants and granted the motion. After a jury

---

[2] Plaintiff alleged that, as owners of the press, defendants were negligent in failing to assure that the machine was reasonably fit for all foreseeable uses and in failing to maintain the machine in a reasonably safe condition. Plaintiff also brought causes of action in products liability against the manufacturer of the press and several others.

returned a verdict of $1,264,987 against the press manufacturer, the trial court entered its final order from which plaintiff appealed as of right to the Court of Appeals.

In that Court, plaintiff contended that at least a question of fact existed under the economic realities test concerning whether Lincoln, in addition to Grand Haven, was also plaintiff's employer. In response, defendants reiterated their theory that application of the economic realities test established that plaintiff was employed by both Grand Haven and Lincoln. Defendants for the first time also presented the alternative theory that as Grand Haven's sole shareholders they were entitled to reverse pierce Grand Haven's corporate veil,[3] with the result that they and Grand Haven could be considered the same entity for purposes of the exclusive remedy provision. In presenting their alternative theory, defendants relied on *Bitar v Wakim*, 211 Mich App 617; 536 NW2d 583 (1995).

The Court of Appeals issued an order affirming the trial court's grant of summary disposition in favor of defendants. Citing its opinion in *Bitar, supra,* the Court of Appeals reasoned that the economic realities test did not apply in this case to determine whether an employment relationship existed between plaintiff and defendants, but that defendants were nevertheless properly recognized as plaintiff's employer through a "reverse piercing of the corporate veil." The

---

[3] The doctrine of "piercing the corporate veil" is traditionally applied to the detriment of a shareholder for the purpose of protecting "a corporation's creditors, or other outsiders, where the corporate entity has been used to avoid legal obligations." *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 650-651; 364 NW2d 670 (1984). Reverse piercing occurs when the doctrine is invoked for the benefit of a shareholder. *Id.* at 651.

Court of Appeals therefore concluded that the exclusive remedy provision barred plaintiff's claims in tort.

Plaintiff then filed an application for leave to appeal with this Court. While this application was pending, we reversed the Court of Appeals opinion in *Bitar*. 456 Mich 428; 572 NW2d 191 (1998). Following this reversal, we granted plaintiff's application for leave to appeal. 458 Mich 875 (1998).

STANDARD OF REVIEW

Appellate review of a trial court ruling on a motion for summary disposition under MCR 2.116(C)(10) is de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Id.* The court must consider the pleadings, affidavits and other documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the non-moving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The motion may be granted if the documentary evidence shows that there is no genuine issue with respect to any material fact and the moving party is therefore entitled to judgment as a matter of law. *Id.*

DISCUSSION

In enacting Michigan's Worker's Disability Compensation Act, the Legislature created a system that substitutes statutory compensation for common-law negligence liability and its related defenses. *Farrell v Dearborn Mfg Co*, 416 Mich 267, 274; 330 NW2d 397 (1982). Under this system, employers provide com-

pensation to employees for injuries suffered in the course of employment, regardless of who is at fault. MCL 418.301; MSA 17.237(301). In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer. MCL 418.131; MSA 17.237(131).

The principle that an employer is entitled to protection from tort liability in exchange for essentially a no-fault obligation to pay benefits is expressed in the exclusive remedy provision of the WDCA: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer . . . ." MCL 418.131(1); MSA 17.237(131)(1). Although by its terms the exclusive remedy provision limits the liability of the employee's "employer," the provision does not define the term "employer," except to note that the term includes certain entities not relevant in this case.[4] That being the case, we have regularly applied the "economic realities test" to determine whether an employment relationship exists for purposes of the exclusive remedy provision, and thus whether an individual or entity is the "employer" of a given employee.[5] See, e.g., *Kidder v Miller-Davis Co*,

---

[4] Specifically, § 131(2) provides in relevant part as follows:

As used in this section . . . "employer" includes the employer's insurer and a service agent to a self-insured employer insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing worker's compensation insurance or incident to a self-insured employer's liability servicing contract. [MCL 418.131(2); MSA 17.237(131)(2).]

[5] Because the Legislature has not chosen to further define "employer" for purposes of the exclusive remedy provision, application of the economic reality test is still appropriate. Cf. *Hoste v Shanty Creek Manage-*

455 Mich 25; 564 NW2d 872 (1997); *Wells v Firestone Tire & Rubber Co*, 421 Mich 641; 364 NW2d 670 (1984); *Farrell, supra*. As we have stated, the test is appropriate because it "looks to the employment situation in relation to the statutory scheme of workers' compensation law with the goal of preserving and securing the rights and privileges of all parties." *Id.* at 276. As further explained in *Kidder, supra* at 35:

> The economic-reality test was embraced by this Court as a more realistic attempt to define the employer-employee relationship through a "balancing of all the relevant factors in each case," than the rigid control test.[6] [*Renfroe v Higgins Rack Coating & Mfg Co*, 17 Mich App 259, 265; 169 NW2d 326 (1969).] Given the increasingly complicated relationships developing in today's business and economic marketplaces anything other than a totality of the circumstances test would be an insufficient guide by which to evaluate the employee-employer relationship.

Although the totality of the circumstances is considered, in applying the economic realities test, the courts generally consider the following four factors "(1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Askew v Macomber*, 398 Mich 212, 217-218; 247 NW2d 288 (1976); see also *Kidder, supra* at 34-35; *Wells,*

---

*ment, Inc*, 459 Mich 561, 571-572; 592 NW2d 360 (1999) (noting that for purposes of § 161 of the WDCA [defining an "employee"] the economic realities test has been superseded by legislative enactment).

[6] *Kidder, supra* at 31-35, contains an excellent discussion of the history of the economic realities test and its predecessor "control" test. See also *Wells, supra* at 646-647.

*supra* at 648-650. No one factor is controlling. *Farrell,* *supra* at 276.

In our effort to determine whether the tort claim at issue in this case is barred by the exclusive remedy provision, it is first helpful to review the case law applying the economic realities test for purposes of this provision. Although these cases do not always lend themselves to neat or easy categorization, at least some broad distinctions may be made. One line of authority involves what can be called the dual employer or coemployer cases. In these cases, the employee typically has a "legal" or "actual" employer against whom there is no question that a tort suit is barred by the exclusive remedy provision, and the dispositive question is whether, under the economic realities test, a second entity can also be classified as an employer for purposes of the provision. See, e.g., *Kidder, supra* (labor broker-customer); *Howard v Dundee Mfg Co, Inc,* 196 Mich App 38; 492 NW2d 478 (1992) (sister corporations); *Tucker v Newaygo Co,* 189 Mich App 637; 473 NW2d 706 (1991) (state-county); *Dagen v Village of Baldwin (On Remand),* 183 Mich App 484; 455 NW2d 318 (1990) (state-municipality); *Berger v Mead,* 127 Mich App 209; 338 NW2d 919 (1983) (police department joint venture comprised of multiple police departments).

Another line of authority involves cases concerning parent and subsidiary corporations. *Wells* is, of course, the leading case in this area. In *Wells,* the employee was injured during the course of his employment at a wholly owned subsidiary corporation; he then brought suit against the subsidiary's parent corporation. *Id.* at 645-646. This Court applied the economic realities test and found that the parent cor-

poration was the employee's employer. *Id.* at 648-650. This Court recognized that this result constituted "in effect, . . . a 'reverse-piercing' " of the parent corporation's corporate veil and acknowledged that the general rule in Michigan is that separate entities, including that of corporation and shareholder, will be respected. *Id.* at 650. However, this Court premised its willingness to depart from the general rule and disregard the separate corporate entities in that case on the Court's "recognition of the important public policies underlying the [WDCA] and our belief that a contrary determination would be inequitable under the facts of this case."[7] *Id.* at 615.

When the dual employer cases are compared to the parent-subsidiary corporation cases, it is apparent that the dual employer cases involve an essentially horizontal relationship between two business entities who, if so warranted by the application of the economic realities test, can both claim employer status for purposes of the exclusive remedy provision. See, e.g., *Kidder* and *Howard, supra.* In other words, in dual employer cases, the courts have recognized that an employee can work for two employers at the same time. See, e.g., *Kidder* and *Berger, supra.* Thus, in these cases, the separate existence of each entity is respected.

---

[7] For other cases applying *Wells* in the classic parent-subsidiary scenario, see *Verhaar v Consumers Power Co,* 179 Mich App 506; 446 NW2d 299 (1989), and *Nardi v American Motors Corp,* 156 Mich App 275; 401 NW2d 348 (1986). For cases applying *Wells* to factual permutations of the classic scenario with varying results, see *James v Commercial Carriers, Inc,* 230 Mich App 533; 583 NW2d 913 (1998), and *Wodogaza v H & R Terminals, Inc,* 161 Mich App 746; 411 NW2d 848 (1987); see also *Green v Windsor Machine Products, Inc,* 173 F3d 591 (CA 6, 1999).

Conversely, in the classic *Wells* parent-subsidiary scenario, an essentially vertical relationship exists between two business entities who, if warranted by the application of the economic realities test and the equities of the case, will be treated as essentially one entity for purposes of the exclusive remedy provision. See, e.g., *Wells, supra*; *Verhaar v Consumers Power Co*, 179 Mich App 506, 509; 446 NW2d 299 (1989). Thus, in these cases, if warranted, the separate existence of the two entities is disregarded.

Apart from these two broad lines of authority there is also the *Bitar* case, which is hard to reconcile with our previous jurisprudence. In *Bitar*, the plaintiff was employed by a corporation. 456 Mich 430. The defendant was the corporation's sole shareholder and principal employee; he also owned the premises where the corporation was located. *Id.* See also 211 Mich App 618-619. After the plaintiff fell on the premises, she received worker's compensation benefits from the corporation. 456 Mich 430. She then brought a premises liability suit against the defendant personally in his capacity as the premises owner. *Id.* at 430, 434; see also 211 Mich App 618-619. The defendant moved for summary disposition under the exclusive remedy provision, contending that because he was the sole owner of, and therefore inseparable from, the corporation, he should be treated as the plaintiff's employer under the reverse-piercing doctrine. 211 Mich App 619. The trial court agreed and granted the motion. 456 Mich 430.

The Court of Appeals affirmed, finding that the economic realities test did not apply, but that the defendant was nonetheless entitled to invoke the doctrine of reverse piercing. 211 Mich App 620-622.

This Court reversed the judgment of the Court of Appeals, holding that the defendant was not entitled to the protection of the exclusive remedy provision; unfortunately, there was no majority with respect to the reasoning for this holding. 456 Mich 435 (BRICKLEY, J., with CAVANAGH and KELLY, JJ.), 436 (MALLETT, C.J., with BOYLE, J.). In his lead opinion, Justice BRICKLEY, noted that "[i]n cases involving a parent-subsidiary corporate structure, an economic realities test is used to determine which entity, or both, is the employer under the [WDCA]."[8] *Id.* at 433, n 1 (BRICKLEY, J., with CAVANAGH and KELLY, JJ., concurring). However, Justice BRICKLEY agreed with the parties that the economic realities test did not apply "to the case currently before the Court." *Id.* Justice BRICKLEY further found that the equities of the case did not merit a reverse piercing of the corporate veil. *Id.*

Chief Justice MALLETT concurred in the result reached by Justice BRICKLEY, but wrote separately for the purpose of noting that the outcome of the case may have been different had the defendant preserved the issue of coemployee immunity under MCL 418.827(1); MSA 17.237(827)(1). *Id.* at 435-436 (MALLETT, C.J., with BOYLE, J., concurring). Finally, Justice WEAVER dissented on the ground that there was no need to address the reverse-piercing issue because the plaintiff's suit was nevertheless barred by MCL 418.827(1); MSA 17.237(827)(1). *Id.* at 436-438 (WEAVER, J., with TAYLOR, J., concurring).

---

[8] To the extent that Justice BRICKLEY's opinion in *Bitar* implies that for purposes of the exclusive remedy provision the economic realities test is limited to parent-subsidiary case, it is inconsistent with our opinion today and disavowed.

This all leaves *Bitar* as difficult to draw clear guidance from; however, what can be understood at least is that it was essentially handled as a reverse-piercing case.

Plaintiff now contends that this Court's reversal in *Bitar* compels a reversal in this case. On the other hand, defendants essentially contend that *Bitar*, because it was not a dual employer case, does not preclude the application of the economic realities test to the question whether Lincoln is also plaintiff's employer.

Although the Court of Appeals tried to "wedge" this case into the *Bitar* line of authority, this was incorrect. The reason is that, despite superficial similarities, it simply does not fit. Rather, this case can best be analyzed as a dual employer case, i.e., two separate business entities—corporation and sole proprietorship—in a horizontal relationship with each other, where there is no dispute that one entity (the corporation) is the employee's "legal" or "actual" employer and the dispositive issue is whether the second entity (the sole proprietorship) is also the employee's employer. This situation did not exist in *Bitar*. When viewed as a dual employer case, the separate existence of each entity can be respected, and there is therefore no need to determine, as there is in reverse-piercing cases, whether the separate existence of any entity should be disregarded. Moreover, as we have noted, it is undisputed that the economic realities test applies to dual employer cases.

With this background regarding the law, we now turn to a consideration of the economic realities of this situation. In this respect, we note that whether a business entity is a particular worker's "employer," as

that term is used in the WDCA, is a question of law for the courts to decide if the evidence on the matter is reasonably susceptible of but a single inference. *Nichol v Billot*, 406 Mich 284, 302-303, 306; 279 NW2d 761 (1979), quoting *Flick v Crouch*, 434 P2d 256 (Okla, 1967). Only where evidence of a putative employer's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact to decide. *Id.*

After reviewing the record, we conclude that the issue whether Lincoln was also an employer of plaintiff at the time of his injury is for the trier of fact to decide.

Specifically, plaintiff contends that he was hired by Grand Haven and paid by payroll checks issued by Grand Haven. Although noting that when he worked at Lincoln he was directed by Lincoln supervisor Mark Curtis and that when he worked at Grand Haven he was controlled by Grand Haven supervisor Larry Herzhaft, plaintiff contends that he was ultimately controlled by Grand Haven because, even when working at Lincoln, he was always subject to being called back to Grand Haven.

Finally, plaintiff contends that his work for Grand Haven was in no sense integral to the business of Lincoln or toward the accomplishment of a common goal of Lincoln and Grand Haven, and vice versa. Plaintiff claims, and has offered evidence raising the inference, that Grand Haven and Lincoln are totally separate companies using separate equipment, processes, and employees in distinct buildings to make different parts for different customers. Plaintiff contends that Grand Haven's declaration on the offi-

cial injury report that he was Grand Haven's employee confirms the inference that Grand Haven and Lincoln were separate businesses and that plaintiff was Grand Haven's employee.

Conversely, defendants contend that plaintiff was hired by Kenneth Herzhaft to work for both Grand Haven and Lincoln according to need. Although noting that plaintiff was paid by a payroll check issued by Grand Haven, defendants contend that the payrolls for all the employees of Grand Haven and Lincoln are funded by income generated by both companies. Defendants dispute plaintiff's allegation that Larry Herzhaft was a Grand Haven employee, noting that both Larry Herzhaft and Mark Curtis received their paychecks from Lincoln, with the inference that plaintiff was subject to the authority of Lincoln supervisory employees. Defendants also contend that Larry Herzhaft and Mark Curtis had only the authority to discipline plaintiff, and that it was Kenneth Herzhaft, as the manager, supervisor, and "superior being" of both companies, who had the sole authority to fire employees. The record also indicates that Kenneth Herzhaft allowed Larry Herzhaft and Mark Curtis the latitude to keep production going by switching employees from job to job, thus raising the inference that it was Kenneth Herzhaft who maintained ultimate control over all the employees, including plaintiff.

Finally, defendants contend that plaintiff's work at both Lincoln and Grand Haven was integral to the goal of successfully operating the two interrelated tooling businesses. As indicative of this interrelatedness, defendants have proffered evidence indicating that both companies maintain equipment and certain operations in both buildings and that they share cer-

tain office expenses, such as a single fax line and telephone system. Defendants note that there is no written lease between Grand Haven and Lincoln or defendants, and that Grand Haven pays a nominal rent that is unilaterally determined by Kenneth Herzhaft. Finally, defendants note that Kenneth Herzhaft purchased a single worker's compensation policy to cover both companies.

In light of the numerous conflicting inferences that may reasonably be drawn from the known facts, including who hired plaintiff, who paid plaintiff, and who had the right to supervise, discipline, and fire plaintiff, we conclude that the issue whether Lincoln was a coemployer of plaintiff for purposes of the exclusive remedy provision is for the trier of fact. Therefore, we reverse the Court of Appeals and trial court and remand for further proceedings consistent with this opinion.

WEAVER, C.J., and CORRIGAN and YOUNG, JJ., concurred with TAYLOR, J.

BRICKLEY, J. I concur in the majority's result, and in its application of the economic realities test to the facts of this case. I do not agree, however, that the reverse-piercing doctrine is inapplicable here.

The defendants were the sole shareholders of the Grand Haven Die Casting Company, a closely-held corporation and the plaintiff's "legal" or "actual" employer. *Ante* at 689. I would hold that, under these circumstances, the defendants may take refuge in the exclusive remedy provision if they show that respecting Grand Haven's corporate veil "would subvert justice or perpetuate fraud." *Bitar v Wakim*, 456 Mich 428, 431; 572 NW2d 191 (1998), citing *Wells v Fire-*

*stone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984).

Such a showing cannot, however, be made under the facts alleged in the instant case. The plaintiff here, "[u]nlike the plaintiff in *Wells* . . . never claimed that [the defendant] was h[is] employer in order to receive worker's compensation benefits." *Bitar*, *supra* at 433. Thus, "there is no evidence that [the plaintiff] structured h[is] cause of action in such a way as to reap all the benefits, and none of the drawbacks, of the Worker's Disability Compensation Act. Rather, [the plaintiff's] claims simply recognized the corporate structure established by the defendant." *Id.*

In sum, the plaintiff "injured h[im]self on property owned by a legal entity that was not h[is] employer.[1] Thus, []he can bring a lawsuit against the owner of that property without violating the exclusive remedy provision of the Worker's Disability Compensation Act." *Id.* at 434, citing 6 Larson, Worker's Compensation, § 72.81(b), pp 14-290.93 to 14-290.94.

Under the facts of this case, the defendants cannot show that honoring Grand Haven's corporate existence would "subvert justice or perpetuate fraud." *Bitar*, *supra* at 431. I agree with the majority that the only relevant issue on remand is whether, under the economic realities test, Lincoln Engineering was the plaintiff's "employer" for worker's compensation purposes.

CAVANAGH and KELLY, JJ., concurred with BRICKLEY, J.

---

[1] Pending, of course, the trial court's resolution of the economic realities test issue on remand.