**THE TRUSTEES OF THE B.A.C. LOCAL 32 INSURANCE FUND, et al., Plaintiffs,**

v.

**Paul CALOIA, d/b/a PFC Contracting, Paul Caloia d/b/a PFC Tile, and Paul Caloia, jointly and severally, Defendants.**

No. 02–72167.

United States District Court, E.D. Michigan, Southern Division.

April 3, 2003.

John I. Tesija, Brett P. Huebner, Novara, Tesija, Southfield, MI, for plaintiffs.

Bryan L. Monaghan, Schnelz, Wells, Birmingham, MI, for defendants.

### MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COHN, District Judge.

#### I. Introduction

This is a labor case. Plaintiffs are trustees of various multi-employer fringe benefit funds established through a collective bargaining agreements (CBAs) between unions and managements organizations for the benefit of employees in the tile industry. Plaintiffs are suing Paul Caloia d/b/a PFC Contracting, Paul Caloia d/b/a PFC Tile, and Paul Caloia[1] under ERISA to recover delinquent fringe benefit contributions they claim are due and owing under the CBA based on an audit and to compel a further audit to determine the full amount of delinquent contributions. Caloia filed a counterclaim for (1) conversion and (2) promissory estoppel.

Before the Court are the parties cross motions for summary judgment.[2] Plain-

---

1. As will be explained, Paul Caloia and Paul Caloia d/b/a/ PFC Contracting and Paul Caloia d/b/a PFC Tile are one and the same. As such, defendants will hereinafter be referred to as "Caloia." Any further references to PFC Tile or PFC Contracting will therefore appear in quotations.

2. There are other pending motions in this case. Plaintiffs filed a Motion to File an Amended Complaint and a Motion to Compel, to which Caloia has not yet responded. Plaintiffs seek an order compelling Caloia to answer outstanding discovery requests. In light of the Court's decision, this motion is GRANTED.

tiffs argue that Paul Caloia, regardless of whether doing business as "PFC Contracting" or "PFC Tile," is bound by the CBA either based on a theory of alter ego or as a sole proprietor.

Caloia argues that only work performed by "PFC Contracting" is subject to the CBA because "PFC Contracting" and "PFC Tile" are separate entities and the Local 32 union representative told Caloia that only work performed by "PFC Contracting" was covered by the CBA.

For the reasons which follow, plaintiffs' motion will be granted and Caloia's motion will be denied.

## II. Background

The material facts as gleaned from the parties' papers follow.

Plaintiffs are trustees of various multiemployer benefit funds, which are multiemployer benefit plans governed by ERISA.

Paul Caloia is a tile setter in the tile industry. While he appears to operate as a sole proprietor, he does employ others to assist him on various tile jobs. On May 31, 1989, Caloia registered to do business under the assumed name of "PFC Tile." Caloia has apparently worked on projects under the "PFC Tile" name which did not require him to sign a CBA.

Almost ten years later, on March 5, 1998, Caloia registered to do business under the assumed name of "PFC Contracting." On April 14, 1998, Caloia signed a CBA with B.A.C. Local 32 (Local 32) in order to perform work on a union project, referred to by the parties as the Silverman project. The signature page of the CBA provides:

> We the undersigned have read and understand the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto.

The CBA is signed in the following form: "Paul F. Caloia" appears on the signature line. "PFC Contracting" is listed as the "Name of Company." Under "Principal Officers," listed is "Paul F. Caloia, owner." Caloia completed work on the Silverman project in 1999. Together with executing the CBA, Caloia gave a $10,000.00 cash bond to Local 32 on April 30, 1998. The signature page also states that the CBA is in effect until May 31, 1998 and shall continue thereafter unless properly terminated. Because neither party terminated the CBA before May 31, 1998, the parties were automatically bound by a new CBA, covering the time period of June 1, 1998 to May 31, 2003. This new CBA was provided to the Court in its entirety and the parties do not dispute that it is this CBA which governs their relationship.

After the Silverman project was completed, Caloia wrote to Local 32 on August 1, 2000, stating:

> I regret that as of October 1, 2000, I must leave the union. Being a one-man company, I can not afford to operate my company with all its assets. I am referring to the $10,000.00 cash bond that I had to post when I joined your union. Please don't get me wrong. I understand why it was requested. But I believe I have proven myself in the time I have been a member feel [sic] that you needing a bond on me now is pointless. I can no longer afford to continue under these circumstances. According to my contract, I must submit, in writing, a 60–day notice to quit. Please consider this my notice to reluctantly quit.

The letter is signed by Paul Caloia.

On November 17, 2000, plaintiffs wrote to Caloia stating that an audit of the accounts of both "PFC Tile" and "PFC Contracting" showed that Caloia owed $8,651.37 in fringe benefit contributions for the period of April 1998 to September 2000 to certain funds and $1,450.06 to the Inter-

national Pension Fund, for a total amount owed of $10,101.43.

On January 7, 2001, Caloia apparently wrote plaintiffs complaining about the amounts (this letter is not in the record).

On January 11, 2001, plaintiffs' counsel wrote Caloia stating that the trustees of the funds have declared the $10,000.00 bond forfeited in order to satisfy the results of the audit. The letter also sets forth plaintiffs' position that "PFC Contracting" and "PFC Tile" are alter egos and therefore both entities are bound under the CBA to pay the delinquent contributions.

On April 9, 2001, plaintiffs' counsel wrote to Caloia regarding an April 3, 2001 letter in which Caloia "expressed [an] apparent desire to terminate" the CBA. Although not clear from the record, it may be that Caloia's August 1, 2000 letter (set forth above), was not sent to Local 32 until April 3, 2001 or that Caloia wrote a second letter to Local 32 (which is not in the record) on April 3, 2001. In any event, plaintiffs' counsel responded on April 9 and explained that the CBA in effect [from 1998 to 2003] provides a window for termination and that window will not occur until March 12, 2003 and April 1, 2003.

Although no audit has been performed since September 2000, as gleaned from the deposition testimony, it is estimated that Caloia owes plaintiffs an additional $22,000.00 in fringe benefit contributions.

On May 28, 2002, plaintiffs sued Caloia seeking to recover the delinquent fringe benefit contributions. Plaintiffs filed a three count complaint. Count 1 makes a claim under ERISA, count 2 makes a claim under the builders trust fund, and count 3 is entitled "alter/ego successor liability." As noted above, Caloia filed a counterclaim for conversion, claiming that the $10,000.00 bond was improperly forfeited and also asserting a claim for promissory estoppel based on the allegation that Local 32 told

him only work done as "PFC Contracting" was covered by the CBA.

Also noted above, plaintiffs have filed a motion to amend complaint to assert only one claim under ERISA and to advance the theory that Caloia, under any name which he does business, is bound by the CBA.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a trier of fact or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

### IV. Analysis
#### A.

As described at the hearing, plaintiffs seeking the following relief via summary judgment:

A declaratory order finding that PFC Tile and/or any other successor or entity related to PFC Contracting is bound by the CBA,

An audit of Caloia's books and records, under both assumed names,

Enter a judgment in favor of plaintiffs based on the results of the audit, together with costs, interest, and attorney fees provided by ERISA

Plaintiffs are not yet seeking entry of a money judgment, as the audit has yet to be performed.

## B.

### 1.

Caloia is essentially arguing that no monies are owed to plaintiffs because only "PFC Contracting" is bound by the CBA and it is undisputed that "PFC Contracting" has met all of its contribution obligations with the forfeiture of the $10,000.00 bond. Caloia argues that "PFC Tile" was formed years before "PFC Contracting," that "PFC Tile" has always been "non-union," and that "PFC Tile" and "PFC Contracting" are two separate entities with separate accounts and business addresses.[3]

■ Caloia's argument lacks merit. An individual doing business under an assumed name has no juridical status aside from the individual.[4] It is undisputed that "PCF Contracting" and "PFC Tile" are assumed names used by Caloia in accordance with Michigan law on carrying a business under an assumed name. *See* M.C.L. § 445.1. Thus, "PFC Tile" and "PFC Contracting" are interchangeable and synonymous with Caloia. *See Clark v. United Technologies Automotive, Inc.*, 459 Mich. 681, 683 n. 1, 594 N.W.2d 447 (1999);

*People v. King Tut,* 152 Mich.App. 249, 253, 394 N.W.2d 30 (1986).

### 2.

■ Moreover, the CBA provides as much. Article X, entitled Rights of Parties, section 10.2 states:

*Preservation of Work.* In order to protect and preserve all work heretofore performed by the Employees covered by this Agreement, and to protect against loss of such work by device or subterfuge, it is agreed as follows:

**Wherever the Employer performs work covered by this Agreement at any job site, under its own name or the name of another,** as a corporation, partnership, or other business entity, including a joint venture, in which the Employer, its officers, directors, owners, partners or stockholders, have any ownership control, through family members or others, **the terms and conditions of this Agreement shall be applicable to all such work.**

By its terms, the CBA applies to covered work performed by Caloia under any name. Caloia therefore cannot argue that only work performed by "PFC Contracting" is covered by the CBA. It does not matter that he signed the CBA as owner of "PFC Contracting." In short, once Caloia signed the CBA, he became an union employer and agreed that any individuals in his employ were represented by the union. He also agreed to bound by the CBA, including the provisions that require fringe

---

3. Caloia says "PFC Tile's" address is his home address, which is 9191 Fish Lake Road in Holly, Michigan (his prior address under which he registered PFC Tile is 1144 Casa Loma in Union Lake). "PFC Contracting's" address is 2937 Summit Drive in Highland, Michigan, which Caloia says is a business address.

4. Plaintiffs have also argued that Caloia is bound because "PFC Contracting" and "PFC Tile" are alter egos and that Caloia is bound as the signatory to the CBA. However, plaintiffs have abandoned this argument in favor of the argument, which the Court accepts, that Caloia, as a sole proprietor, is bound by the CBA regardless of whether he was operating under the d/b/a of "PFC Contracting" or "PFC Tile."

benefit contributions on behalf of his employees.

### 3.

■ Thus, to the extent that plaintiffs are seeking a declaratory judgment that Caloia is bound by the CBA, they are entitled to this form of relief. It also follows that plaintiffs are allowed to audit all of Caloia's books, whether under the name "PFC Contracting" or "PFC Tile" to determine the amount of delinquent contributions.

### C.

As to Caloia's motion, his argument that work performed by "PFC Tile" is not covered by the CBA fails in light of the above discussion. As to his counterclaim for promissory estoppel, he says that at the time he signed the CBA he was told by representative of Local 32 that only work performed by "PFC Contracting" would be covered. Such a statement, which plaintiffs deny was made, does not give rise to a viable claim.

■ In an action to collect contributions, the trustees of the various funds stand in the position of the third-party beneficiaries of the CBA and generally are subject to any contract defense that the promisor (here Caloia) could assert against the promisee (here Local 32), if the promisee was suing on the contract. *See Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc.,* 85 F.3d 1098, 1102 (3rd Cir.1996); *Central States, Southeast & Southwest Areas Pension Fund v. Behnke, Inc.,* 883 F.2d 454, 460–61 (6th Cir.1989); *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773–74 (9th Cir.1986). There are, however, severe limitations on the availability of contract defenses in trust fund collection actions: "Congress and the courts have restricted the availability of contract defenses in trust fund collection actions" because "millions of workers depend upon the employ-

ee benefit trust funds for their retirement security." *Carpenters Health & Welfare Trust v. Bla–Delco Constr., Inc.,* 8 F.3d 1365, 1369 (9th Cir.1993) (quoting *Rozay's Transfer,* 791 F.2d at 773). *See also Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 468–71, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); 29 U.S.C. § 1145. Courts have ruled that the three defenses available in a collection action are: (1) the pension contributions are illegal; (2) the collective bargaining agreement is void ab initio, as where there is fraud in the execution; and (3) the employees have voted to decertify the union as [their] bargaining representative, thus prospectively voiding the union's collective bargaining agreement. See generally *Iron Workers' Local No. 25 Pension Fund v. Allied Fence & Security Sys.,* 922 F.Supp. 1250, 1256 (E.D.Mich.1996).

■ Caloia does not assert any of these defenses. Instead, he argues that he had an oral understanding with Local 32 that the CBA would apply only to work performed by "PFC Contracting" which plaintiffs are estopped from denying. In *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.,* 883 F.2d 454 (6th Cir.1989), the Court of Appeals for the Sixth Circuit rejected a similar argument, stating.

"[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound ... [a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Gariup v. Birchler Ceiling & Interior Co.,* 777 F.2d 370, 373 (7th Cir. 1985) (footnote omitted) (quoting *Capitol–Husting Co. v. NLRB,* 671 F.2d 237, 243 (7th Cir.1982)).

The problem with Behnke's reliance on the oral CBA regarding its obligation to make contributions to Central States, however, is that the LMRA and ERISA

820

require employer contributions to trust funds on behalf of employees to be pursuant to detailed written agreements specifying the employer's duty to contribute. *See McHugh v. Teamsters Pension Trust Fund*, 638 F.Supp. 1036 (E.D.Pa.1986) (Fund trustees not bound by alleged oral understandings between union and management; employer benefit plan agreements, by law, must be written and oral modifications or supplementations are invalid) (citing ERISA, 29 U.S.C. § 1102(a)(1), *460 and LMRA, 29 U.S.C. § 186(c)(5)(B)); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th Cir.1988) (ERISA precludes oral modification). Accordingly, but for the other written agreements between Behnke and the Union, the provisions of the oral CBA providing for payments to Central States in year one and again, following negotiations with employees, in year two while reserving the right to negotiate the logistics and carrier for future (third-year) health and welfare payments, would be unenforceable as unwritten and in violation of the LMRA and ERISA.....

A pension or welfare trust is understood to be a third-party beneficiary of a CBA that receives contributions and issues payments negotiated by others. *Southwest Adm'rs Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The contribution and payout amounts and systems are predicated on the trust's receipt of full payment on behalf of covered employees, *Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988). In *Lynch*, the Seventh Circuit explained why trust funds are entitled to enforce employers' written obligations to contribute notwithstanding an employer's proffered defenses to that contractual obligation:

Multi-employer pension and welfare plans would be in a bind if ... flaws in the formation cut off third-party claims. Plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize—perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. *Lynch*, 836 F.2d at 333. Costs of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials—conversations to which plans are not privy—may be especially costly, and hold out especially great prospects of coming away empty-handed....

Here, as in *Behnke*, the plaintiffs are entitled to rely on the CBA in order to determine the employers that are obligated to make fringe benefit contributions. That there may have been an oral agreement which purported to limit the applicability of the CBA is of no consequence. Thus, Caloia's promissory estoppel claim fails.

It also follows that because Caloia is bound by the CBA, it was not unlawful of plaintiffs to forfeit his bond in order to partially satisfy his fringe benefit obligations. As such, Caloia's conversion claim must fail.

Notably, Caloia has not asserted the defense of fraud in the execution. Fraud in the execution "induces a party to believe the nature of his act is something entirely different than it actually is." *Rozay's Transfer*, 791 F.2d at 774 (citing 12 WALTER H.E. JAEGER, WILLISTON ON CONTRACTS § 1488, at 332 (3d ed.1970)). Caloia does not maintain that a misrepresentation or misstatement was made such that he was not aware that the document he was signing was a CBA and there is no evidence in the record to support such an assertion. If anything, Caloia says that there was a misstatement as to the scope of the CBA.

### D.

This said, the Court is mindful of Caloia's circumstances. It appears that Caloia registered to do business under the name "PFC Contracting" for no other reason than to work on the Silverman project, a project which required him to sign a CBA. Previously, Caloia had performed work by himself and with others which apparently did not require him to sign a CBA. However, once he signed the CBA, he became an union employer and all names under which he does business became subject to the CBA. Caloia also seems to recognize his status as a union employer inasmuch as he tried, albeit unsuccessfully, to terminate the CBA.

In short, once Caloia signed the CBA, he was hooked. The fact that the CBA contains a provision binding the employer to the CBA even where they do business under other names is to avoid the situation, which may or may not be present here, where the employer seeks to avoid the obligations under the CBA by doing work under another name or entity.

### V. Conclusion

For all the reasons stated above, the plaintiffs are entitled to the declaratory relief they seek. Caloia is liable for fringe benefit contributions as provided by the CBA, and is required to submit his books and records for an audit to determine the delinquent amount of fringe benefit contributions. Plaintiffs' motion is GRANTED and Caloia's motion is DENIED.

SO ORDERED.